COMMONWEALTH *vs.* NILS NORDSTROM, JR.

Middlesex.    September 17, 1973. — November 16, 1973.

Present:    TAURO, C.J., REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Homicide. Practice, Crimnal,* Capital case, Argument by prosecutor.

There was no merit in a contention by a defendant convicted of murder in
the first degree by shooting that a finding of premeditation on his part
constituted a miscarriage of justice and that this court should reduce the
verdict under G. L. c. 278, § 33E, where there was no evidence of sud-
den combat with the deceased as an aggressor, or of a situation in
which the defendant was not the aggressor and was subjected to an
angry confrontation, or a situation of uncontrolled anger with violent
acts by both the defendant and the deceased, and there was evidence that
the defendant had formed a prior intent to shoot the deceased. [311-313]
Under the broad power of review conferred by G. L. c. 278, § 33E, it was
proper for this court in a capital case to examine alleged prejudicial ·
statements by the prosecutor in his argument against the background of
the entire case, notwithstanding failure of counsel to object or except
thereto. [314]
Where statements made by the prosecutor in closing argument in a capital
case were permissible as inferences of fact from the testimony and were
unlikely to mislead the jury into believing they were based on personal
knowledge of the prosecutor independent of the evidence, they did not
require that a verdict of murder in the first degree be reduced under
G. L. c. 278, § 33E. [314-315]
Notwithstanding a determination that two statements made by the prose-
cutor in closing argument in a capital case were highly improper as tend-
ing to mislead the jury, there was on the whole record of the trial no
miscarriage of justice requiring that a verdict of murder in the first
degree be reduced under G. L. c. 278, § 33E. [315-316]

INDICTMENTS found and returned in the Superior Court on
August 12, 1969.

The cases were tried before *Roy,* J.

*Malvine Nathanson* for the defendant.

*Barbara A. H. Smith,* Assistant District Attorney, for the
Commonwealth.

REARDON, J.   This case taken under G. L. c. 278, §§ 33A-33G, is an appeal from convictions for murder in the first degree and unlawful possession of a firearm, as well as from the denial of a motion for a new trial. The jury in returning the verdict of guilty on the murder indictment recommended that the death penalty be not imposed.

The evidence could show that the alleged murder in this case arose out of a barroom argument engaged in between Austin Jordan, the decedent, and the defendant. A bet was made and the defendant made his way to a telephone located in the barroom to procure proof for his point. He returned to announce that the telephone was out of order and was contradicted by another customer who said he had just used the telephone. The defendant was accused by Jordan and one Daley of "welshing" on the bet. The defendant then left the bar and returned some time later after a visit to his home, at which time he stated that he "didn't like being made fun of." Daley, who was an off-duty police officer, as was Jordan, at this point "frisked" the defendant, and then announced to Jordan that the defendant "was clean." Thereafter the defendant and Jordan engaged in some conversation and went out the front door of the cafe. A few moments later two shots approximately five to fifteen seconds apart were heard, following which Jordan came back through the front door bent over and holding his stomach. He proceeded to the end of the bar where he fell saying, "He shot me." He was pronounced dead at a hospital an hour later. At trial the defendant admitted shooting Jordan but maintained that the shots were fired accidentally.

1. The defendant argues that the finding that he acted with premeditation and was guilty of first degree murder constituted a miscarriage of justice, and that this court should reduce the verdict under the power granted to it in c. 278, § 33E. There was no evidence in the case to support a finding of felony murder or murder with extreme atrocity and cruelty. It is the contention of the defendant that his actions were certain to lead to his discovery and apprehension, and it was most unlikely that he would deliberately plan a homicide in

such an inept and stupid fashion. He also claims that his background and character were not consistent with his forming an intention to kill Jordan merely because of a minor barroom disagreement. He argues that the evidence shows that his behavior after the first shot was motivated by fear and was not properly productive of the finding of deliberate premeditation. We, however, do not see the evidence in this case as comparable to that in *Commonwealth* v. *Baker,* 346 Mass. 107 (1963), the leading case dealing with the court's power under G. L. c. 278, § 33E, to direct the entry of a verdict of a lesser degree of guilt. Cases in which we have reduced the verdict have generally been concerned with "a sudden combat in which the deceased was initially the aggressor," *Commonwealth* v. *Kendrick,* 351 Mass. 203, 210 (1966), or circumstances in which "the defendant was not the aggressor; he was subjected to an angry confrontation," *Commonwealth* v. *Kinney,* 361 Mass. 709, 713 (1972), or a situation of "uncontrolled anger and violent action on the part of both the defendant and the decedent," *Commonwealth* v. *Ransom,* 358 Mass. 580, 583 (1971). The jury could have found here that the defendant formed an intention to kill Jordan after their encounter and did not execute his plan until after he had left the bar, procured a gun and returned. We have only the defendant's story of what occurred between Jordan and himself outside the bar before the shooting but, unlike the cases referred to above, there was no persuasive evidence of any aggressive action by Jordan. Compare *Commonwealth* v. *Rollins,* 354 Mass. 630, 635 (1968). Absent evidence of fear of sudden attack or aggression, and with the evidence that the defendant had an opportunity to form a prior intent, we would be unwarranted in disturbing the verdict. We followed this course in the face of considerably more compelling evidence for reducing a verdict in *Commonwealth* v. *Smith,* 363 Mass. 876 (1973). We thus cannot agree with the defendant's contention that his lack of intelligent planning and his peaceful character make this an appropriate case for changing the decision of the jury. There is no dispute that the defendant had an argument

with Jordan, was insulted and ridiculed by him, went home, returned with his gun, shot the victim twice, and fled home. This evidence was sufficient to warrant a finding of premeditation. Compare *Commonwealth* v. *Bearse,* 358 Mass. 481 (1970).

2. The defendant also attacks allegedly improper statements made by the prosecutor in the closing arguments. It is asserted that the prosecutor made five statements purporting to be factual which had no basis in the evidence and thereby prejudiced the defendant's case before the jury. The most complete statement of the law on this matter is found in *Commonwealth* v. *Sherman,* 294 Mass. 379 (1936), in which the defendant had objected to the interruption of his counsel's closing argument by the judge. With respect to the testimony of a witness who had typed an alleged confession and had stated that the paper and copies had been removed and reinserted in the typewriter several times, defence counsel stated in his closing argument: "I say it is impossible to put any four sheets of paper and three sheets of carbon . . .." *Id.* at 390. The issue was whether the judge's interruption and admonition of counsel's statement of personal belief was proper. The court held that it was. "He may not properly in argument make a statement of fact 'purporting to be on his personal knowledge or . . . concerning which the inference well might be drawn that he had personal knowledge.' *Doherty* v. *Levine,* 278 Mass. 418, 419. . . . [other citations omitted.] It may be that the language of counsel was susceptible of the interpretation that his words 'I say,' by which he prefaced his last statement before the interruption, meant 'I contend,' 'I submit' or 'I argue,' but an 'inference well might be drawn that he had personal knowledge' of the fact stated." *Id.* at 391.

While this rule has been frequently cited, there appear to be no occasions when such extraevidentiary remarks by a prosecutor were considered grounds for overturning a conviction. Normally such statements are adequately neutralized by a timely curative instruction or a general reminder by the judge that the arguments of counsel are not evidence.

See *Commonwealth* v. *O'Toole,* 351 Mass. 627, 635-636 (1967); *Commonwealth* v. *Balakin,* 356 Mass. 547, 553 (1969); *Commonwealth* v. *De Christoforo,* 360 Mass. 531, 537 (1971). In this case, however, no such remedial steps were taken since counsel made no objection, requested no instruction, and saved no exception.

The state of affairs raises conflicting considerations. Normally in appeals under G. L. c. 278, §§ 33A-33G, nothing is before the court unless an exception is properly saved. See *Commonwealth* v. *Foley,* 358 Mass. 233, 236 (1970). We reaffirm our holding in that opinion. On the other hand, as the defendant argues, the failure to object and possibly obtain a curative instruction was the very thing which permitted the remarks to have their maximum prejudicial effect.[1] Given the broad powers of review granted the court in capital cases under G. L. c. 278, § 33E, it is proper for us to examine the alleged prejudicial statements against the background of the entire case to determine if a miscarriage of justice has occurred. *Commonwealth* v. *McCauley,* 355 Mass. 554 (1969).

Three of the five claimed prejudicial statements may be dealt with together:

(1) "He got the gun, and there is no question that he took two bullets and put them in the gun and loaded it then and there. Two bullets were put in the gun."

(4) "The chemist told you what they were — pieces of human tissue and bone — and there is no question that was human tissue and bone from the arm of the dead man, Austin Jordan."

(5) "That's what happened out there, Mr. Foreman and members of the jury: two separate shots fired by this man, the first shot hitting Austin Jordan some 15 feet away, and then as he ran to get in, the second shot going over him, hitting the wall, splattering through his back."

[1]While the defendant notes that counsel objecting in such situations might exacerbate the harm to the defendant by calling attention to the statements, it was certainly possible to request an appropriate instruction on the matter of the nonprobative value of the argument after the prosecutor had concluded.

In each case the statement of "personal knowledge" at-
tributed to the prosecutor was a permissible inference of
fact from testimony at the trial. In regard to No. 1, there was
testimony by the defendant that he believed the gun was un-
loaded before the night in question. There were two shots
fired, and there were two cartridges missing from the car-
tridge belt when police entered the defendant's apartment.
With regard to No. 4, there was testimony that the material
had been found the next morning in the general area where
Jordan had been shot. The third statement, No. 5, could be
inferred from the testimony on the location of the material,
the condition of the wall, the condition of the body, and the
subsequent entrance of the victim into the bar. It was not in-
consistent with the defendant's own testimony. The defend-
ant concedes it would have been perfectly proper for the
prosecution to argue explicitly that the jury should reach
these conclusions based on the relevant evidence. While it
might have been preferable for the prosecutor to be clearer
on these matters, his actual statements prefaced by, "there is
no question," and in the case of No. 5 which followed a
statement of the same theory including the phrase, "without
much question," were unlikely to mislead the jury into
believing he had personal knowledge independent of the evi-
dence. Counsel has the right to argue inferences from the
evidence favorable to his case, and the precise form should
not control unless it tends to lead the jury to an improper in-
ference not from the evidence but from the apparent per-
sonal knowledge of the attorney. See *Commonwealth* v.
*Brown,* 354 Mass. 337, 350 (1968).

The remaining two statements present more serious prob-
lems. The first concerns whether the defendant and Jordan
left the barroom together or separately. The prosecutor
argued that "every single person in that barroom, with the
exception of this defendant, tells you that the victim Jordan
and the defendant Nordstrom went out the front door to-
gether, one slightly behind the other. Every single witness
tells you that, except this defendant."

In fact, there was another witness who corroborated the

defendant's account that he left the bar before the victim through a separate entrance. This misstatement of the evidence by the prosecutor may have tended to mislead the jurors on a significant issue since the defendant's earlier departure weakens the contention that he intended to kill the victim.

The final statement challenged dealt with the frisk performed on the defendant upon his return to the bar by Daley, a friend of the victim. There was no evidence on the reason for the frisk, and when Daley was asked the reason by the prosecutor the question was excluded by the judge. Nevertheless, in his summation the prosecutor stated: "Why? Oh, Mr. Foreman, and members of the jury, they had reason to think from something that had been said." Counsel thus invited the jury to speculate on a matter which had been expressly excluded by the judge, and stated a possible inference unfavorable to the defendant.

We think it is clear that those statements were highly improper. Notwithstanding, our immediate inquiry presents a broader issue. Looking at the summation as a whole against the evidence and trial as a whole, we think that there was no miscarriage of justice. When improper remarks by the prosecutor raise possible improper inferences with respect to collateral or subsidiary issues in the face of strong evidence against the defendant, as was present in this case, such statements alone do not present sufficient reason to upset the verdict under G. L. c. 278, § 33E. *Commonwealth* v. *De Christoforo,* 360 Mass. 531, 539 (1971). Compare *Commonwealth* v. *Ransom,* 358 Mass. 580 (1971).

3. There is no merit in any other contention by the defendant.

*Judgments affirmed.*