COMMONWEALTH *vs.* ROBERT J. SHELLEY.

Norfolk. November 7, 1977. — February 23, 1978.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, & LIACOS, JJ.

*Homicide. Insanity. Practice, Criminal,* Capital case, Argument by prosecutor.

At a murder trial in which the defendant produced expert psychiatric testimony to support his defense of insanity, the prosecutor's remarks in his final argument, in which he insinuated that the expert witnesses were "bought" and in which he attempted to refute the defense of insanity by calling on his own personal knowledge with regard to irrelevant incidents, were so prejucicial to the defendant as to require a new trial. [469-473]

Although two expert witnesses produced by the defendant at a murder trial testified that his behavior was the result of a mental disease or defect and the Commonwealth's expert testified that it was the result of alcohol consumption, there was no error in denying the defendant's motion for a directed verdict where the jury were not required to believe the experts and where there was other evidence from which the jury could find that the defendant acted with deliberate premeditation. [473-474]

INDICTMENT found and returned in the Superior Court on October 3, 1975.

The case was tried before *Abrams,* J.

*William P. Homans, Jr.,* for the defendant.

*John C. Prescott,* Assistant District Attorney (*Charles J. Hely,* Assistant District Attorney, with him) for the Commonwealth.

HENNESSEY, C.J. Robert J. Shelley was indicted for the killing of William C. Dubbels (Dubbels). The defendant admitted killing Dubbels, but claimed criminal irresponsibility. The jury found the defendant guilty of murder in the first degree and the statutory sentence of life imprisonment was imposed. The trial judge denied the defendant's motion for a new trial.

The defendant then appealed under G. L. c. 278, §§ 33A-33G, claiming that (1) as matter of law, the Commonwealth had not carried out its burden of proving that the defendant was sane, and that (2) the verdict was against the weight of the evidence. In a motion to amend the assignments of error, subsequently allowed by this court, the defendant raised two additional issues, namely, the propriety of the prosecutor's closing argument and the correctness of the judge's charge. Neither of these issues was the subject of a timely objection or exception at trial. The defendant also requested this court to exercise its powers under G. L. c. 278, § 33E, either to order a new trial or to direct the entry of a verdict of a lesser degree of guilt.

We have reviewed the entire record pursuant to our duties set forth in G. L. c. 278, § 33E. Under this provision, we have examined the alleged errors not subject to exception or objection at trial against the background of the entire case to determine whether a miscarriage of justice has occurred. *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 314 (1973). We conclude that certain remarks made by the prosecutor in his closing argument were of such an improper and prejudicial nature as to require reversal, and a new trial.

There is no dispute as to the following facts. About 11:30 P.M. on September 2, 1975, the defendant and three friends visited the victim Dubbels, at his home. The defendant had been acquainted with Dubbels for about five months, through his employment at an all night grocery store which Dubbels managed. The visit paid to Dubbels was social in nature. There was evidence that the men talked, drank, and joked for about two hours after arriving. There was also evidence that during the evening, Dubbels expressed physical attraction to the defendant, but that his statements in this regard were not taken seriously.

About 2:30 A.M., the men who accompanied the defendant to Dubbels's house began to leave. Dubbels invited the defendant to spend the night, saying that he wanted to talk

to the defendant and that he wanted the defendant to help him open the store at 7 A.M. The defendant agreed to stay.

After his friends left, the defendant went upstairs and took a shower. Dubbels then suggested that the defendant sleep in his (Dubbels's) room. The defendant agreed, got into bed beside Dubbels, and turned off the lights. Soon after, Dubbels began to make sexual advances toward the defendant. Upset, the defendant jumped out of bed and went downstairs to the kitchen for a drink. After making himself a drink, the defendant took a meat cleaver and a roasting fork out of a kitchen drawer, and went back upstairs. According to the defendant, he turned off the bathroom light so that Dubbels could not see the weapons, and then sat down on the bed. Dubbels put his arm around the defendant, whereupon the defendant attacked Dubbels, repeatedly hitting him with a meat cleaver, stabbing him with the roasting fork, choking him, and finally jumping on his head.

A few hours after the incident, the defendant made several telephone calls, including calls to the news media, to several friends, and to the police. Shortly thereafter the police arrived, briefly investigated the scene, and arrested the defendant for murder. The defendant was informed of his Miranda rights, was frisked, and then handcuffed. At the defendant's repeated insistence, the police took a statement at the scene. Subsequently, the officers took the defendant to the Franklin police station, where the defendant gave a lengthy account of the killing.

At trial, two expert witnesses produced by the defendant testified that the defendant has a paranoid personality. It was the opinion of the psychiatrist that, on the night of the killing, the defendant suffered a "dissociative reaction" which was caused by his underlying personality structure and which resulted from a "homosexual panic." He testified that the dissociative reaction was a mental disease or defect, and that, because of the dissociative reaction, the defendant was not able conform his conduct to the requirements of the law.

The expert witness produced by the Commonwealth agreed with the conclusions that the defendant had a paranoid personality, and that, on the night of the killing, he suffered a dissociative reaction resulting from homosexual panic. It was his opinion, however, that the dissociative reaction was caused in part by the consumption of alcohol.

1. Both the Commonwealth and the defendant agree that ordinarily "in appeals under G. L. c. 278, §§ 33A-33G, nothing is before the court unless an exception is properly saved." *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 314 (1973). In regard to alleged impropriety in the prosecutor's closing argument, however, we have recognized that the failure to object and possibly obtain a curative instruction may be the very thing which permits the remarks to have their maximum prejudicial effect. *Id.* See *Commonwealth* v. *Earltop,* 372 Mass. 199, 203-204 (1977). Consequently, "[g]iven the broad powers of review granted the court in capital cases under G. L. c. 278, § 33E, it is proper for us to examine the alleged prejudicial statements against the background of the entire case to determine if a miscarriage of justice has occurred." *Commonwealth* v. *Nordstrom, supra.* See *Commonwealth* v. *Earltop, supra*; *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 536 (1971).

2. The defendant challenges two aspects of the prosecutor's closing argument as unfair and prejudicial. The defendant first contends that the prosecutor's remarks concerning the credibility of his expert witnesses improperly insinuated that these witnesses were "bought."[1] Secondly,

---

[1] His remarks in this regard were as follows: "Now, Dr. Salvesen was hired, paid by the family. That doesn't make him a terrible mercenary soldier. . . . And the young psychologist comes down after him, and he is also hired by the family — and again he is not a prostitute; I'm not implying that at all. You can imagine how well these fellows are paid. I didn't ask them. I didn't think that was the proper thing to do. Do you think they were paid nickels and dimes? . . . [A]re they going to hire somebody and bring him into court if they're not going to testify to what they want them to testify to?"

The prosecutor characterized one opinion offered by Dr. Salvesen as "another example of how psychiatrists think, or at least a psychiatrist who has been hired by the family to tesify on his behalf."

the defendant asserts that the prosecutor impermissibly attempted to refute the defense of criminal irresponsibility by calling on his own personal knowledge with regard to incidents irrelevant to the case. We conclude that both lines of argument were improper and that the argument as to the credibility of the expert witnesses, standing alone, was so prejudicial in nature as to require reversal.

First, the prosecutor's remarks as to the experts were based on facts not in evidence. The argument essentially urged the jury to discount the testimony of the defendant's expert witnesses because they were paid large fees by the defendant's family. There was evidence that the witnesses were paid by the family, but there was no evidence that they received anything more than their usual fees. Thus, to urge an inference that the expert testimony was purchased by the defendant was improper and unfair.

Second, the argument attempted impermissibly to play on the prejudices of the jurors. Suggestions were made, albeit in disclaimer form, that the expert witnesses were "mercenary soldiers" and "prostitutes." Further, characterizations of psychological testing techniques as "well-meaning ink-blot tests . . . mice . . . goblins," could only have been made for their emotional impact. Such elements of irrationality and irrelevance introduced into the trial can only serve to make it less likely that the jury will return a verdict based on fair, calm consideration of the evidence. See *Commonwealth* v. *Burnett*, 371 Mass. 13, 18-19 (1976); *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975); *Commonwealth* v. *Perry*, 254 Mass. 520, 531 (1926); ABA Standards Relating to the Prosecution Function § 5.8 (c) (Approved Draft 1971).

The most important factor in our reasoning is that this is not a case in which overreaching argument was confined to collateral issues only, *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 316 (1973), wherein either overwhelming evidence of the defendant's guilt, or adequate curative instructions from the judge, might have rendered the prosecutorial misconduct harmless error. See *Commonwealth* v. *Nord-*

*strom, supra; Commonwealth* v. *Richards,* 363 Mass. 299, 309-310 (1973); *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 538 (1971) (overwhelming evidence of guilt neutralizing prosecutorial misconduct). See also *Donnelly* v. *DeChristoforo,* 416 U.S. 637 (1974); *Commonwealth* v. *Earltop,* 372 Mass. 199, 203-204 (1977); *Commonwealth* v. *Gouveia,* 371 Mass 566, 570-571 (1976); *Commonwealth* v. *Burnett,* 371 Mass. 13, 19 (1976); *Commonwealth* v. *Borodine,* 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 313 (1973); *Commonwealth* v. *D'Ambra,* 357 Mass. 260, 262 (1970) (curative instructions neutralizing prosecutorial misconduct). Rather, the comments went to the very heart of the case. They struck, and struck impermissibly, at the defendant's sole defense, and sought to impeach his only witnesses.

Thus, although it is true that the judge clearly and correctly instructed the jury that opening and closing statements of counsel are not evidence, we conclude that such instructions could not have served to neutralize the prejudicial effect of the prosecutor's remarks.

Other comments of the prosecutor, although they are not now crucial to our decision, might in themselves have been sufficient to require a new trial. The prosecutor, by recounting personal experiences to the jury, completely deviated from the record evidence. Aside from their questionable relevance to the case, the remarks amounted to unsworn testimony, not subject to cross-examination. As such, they were improperly introduced. See generally *Commonwealth* v. *Earltop,* 372 Mass. 199, 204 (1977) (Hennessey, C.J., concurring); *Commonwealth* v. *Redmond,* 370 Mass. 591, 594-595 (1976); *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 313 (1973); ABA Standards Relating to the Prosecution Function § 5.8 (a) (Approved Draft 1971); Vess, Walking a Tightrope: A Survey of Limitations on the Prosecutor's Closing Argument, 64 J. Crim. L. & Criminology 22, 28 (1973); Comment, The Nature and Consequences of

Forensic Misconduct in the Prosecution of a Criminal Case, 54 Colum. L. Rev. 946, 950-951 (1954).

In reversing the judgment here, we are mindful of the fact that the prosecutor has a duty "to argue the public's case aggressively and resourcefully." *Commonwealth* v. *Earltop,* 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). We also agree with the Commonwealth's point that in heat of argument, remarks made during trial may be later regretted. Nevertheless, the fact remains that the prosecuting attorney "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger* v. *United States,* 295 U.S. 78, 88 (1935). Cf. *Commonwealth* v. *Haas,* 373 Mass. 545, 556-557 (1977); *Commonwealth* v. *Borodine, supra.* It is further true that "the average jury, in a greater or less degree, has confidence that these obligations . . . will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Berger* v. *United States, supra.* As such, the scope of argument to the jury is necessarily limited "to the evidence and the fair inferences from the evidence." *Commonwealth* v. *Earltop,* 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). Deviations from this rule, when prejudicial to the defendant, are only self-defeating to the Commonwealth. See *Commonwealth* v. *Burke,* 373 Mass. 569, 575 (1977).

We think it is important to add that, although such impermissible argument has been described as "*prosecutorial error,*" *Commonwealth* v. *Earltop, supra* at 206, defense counsel may be at least as blameworthy as the prosecutor where, as here, no objections are taken to grossly improper argument. Failure of defense counsel to offer objections to such prosecutorial overreaching creates a dilemma for the trial judge in addition to the predicament described in *Earl-*

*top.*[2] Without objection offered by defense counsel the judge must determine whether a correction should be made sua sponte, or whether such action would be an unwarranted intrusion on the adversary process. Allowing such an impermissible argument to go to the jury uncorrected, simply through failure to offer a timely objection, is a flagrant failure of defense counsel in his function.[3]

3. Although we have determined that there must be a new trial of this indictment, we must, of course, decide the question raised by the defendant's argument that the judge erred in denying the defendant's motion for a directed verdict and in placing before the jury the issue of murder in the first degree based on deliberate premeditation. The defendant's contention is based on the theory that, viewed as a whole, the expert testimony offered both by the defendant and the Commonwealth precluded a finding of deliberate premeditation. All experts agreed, for example, that the defendant suffered a "dissociative reaction" on the night of the killing. The only point of disagreement among the witnesses was the cause of this mental state: The defense witnesses testified that the defendant's behavior on the night of the killing was the result of a mental disease or defect; the Commonwealth's witness testified that this behavior was the result of consumption of alcohol. The defense points out that if the jury chose to believe either theory, then a finding of murder in the first degree based on deliberate premeditation would have been impossible. See *Commonwealth* v. *Costa,* 360 Mass. 177, 185 (1971); *Commonwealth* v. *Rollins,* 354 Mass. 630, 634 (1968); *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 617 (1949) (consumption of alcohol may diminish the capacity to premeditate and therefore may reduce a homicide from murder in the first degree to murder in the second degree).

---

[2] "After days or weeks of trial the trial judge is placed in a dilemma. A mistrial may be declared only at great public expense. The judge's usual recourse is to curative instructions; the appellate court may or may not agree with his decision." *Commonwealth* v. *Earltop,* 372 Mass. 199, 206 (1977) (Hennessey, C.J., concurring).

[3] We note that counsel on this appeal was not trial counsel.

This argument is true as far as it goes. It cannot be determinative, however, on the issue of premeditation, for it is based on the erroneous assumption that the jury were required to believe the testimony of either one of the expert witnesses. We have stated that the law imposes no such requirement on the jury. "It is elementary that the acceptance or rejection of oral testimony, in whole or in part, is within the exclusive province of the jury." *Commonwealth* v. *Holiday*, 349 Mass. 126, 129 (1965). See *Commonwealth* v. *Kostka*, 370 Mass. 516, 535-536 (1976); *Commonwealth* v. *Smith*, 357 Mass. 168, 179-180 (1970).

The defendant concedes that the evidence on the question whether he suffered an underlying mental disease or defect was conflicting. There was further question in the evidence concerning the extent and effect of the defendant's drinking.[4] Additionally, there was evidence from which the jury could find that on becoming enraged at the victim's homosexual advances, the defendant deliberately procured deadly weapons and concealed them for the purpose of killing the victim. As such, there was no error in submitting to the jury the issue of murder in the first degree based on deliberate premeditation.

4. Since we have concluded that there must be a new trial, other assignments of error argued by the defendant, as to matters not likely to come into issue at any new trial, need not be considered, nor is it necessary for us to consider the defendant's argument that there should be an entry, under our powers residing in G. L. c. 278, § 33E, of a verdict of guilty of a lesser crime than murder in the first degree.

Accordingly, the judgment of the Superior Court is reversed, the verdict set aside and the case remanded for a new trial.

*So ordered.*

---

[4] On this issue, there was evidence that the defendant had as much as "eight or nine" beers or as little as "a few beers" and some Scotch whisky. There was evidence that the alcohol consumed that evening caused the dissociative reaction leading to the killing. There was also evidence that within three hours of the killing, the defendant seemed to be in control of himself and the arresting officer could detect no odor of alcohol on the defendant's breath.