The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Rodney V. SOMMERS, Defendant–Appellant.

No. 06CA1335.

Colorado Court of Appeals, Div. II.

Sept. 4, 2008.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Springer & Steinberg, P.C., Harvey Steinberg, Michael P. Zwiebel, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Rodney V. Sommers, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree burglary, third degree assault, stalking, obstructing a police officer, and second degree trespass. We affirm.

## I. Background

Defendant and the victim were involved in a romantic relationship. In separate events occurring in February and April 2004, defendant entered the victim's home against her wishes and assaulted her. Upon being con-

fronted by police outside the victim's home after the second incident, defendant fled before being captured and arrested. Defendant was originally charged in two cases, but the trial court granted the prosecution's motion to consolidate them.

At his jury trial in March 2006, defendant asserted a defense of involuntary intoxication and presented evidence of his bipolar disorder. Defendant was acquitted of second degree kidnapping, convicted of all the other charges, and sentenced to a prison term.

## II. Involuntary Intoxication

Defendant asserts that the trial court erroneously instructed the jury concerning the defense of involuntary intoxication. He contends that, because medication he ingested triggered adverse effects of his bipolar disorder, the trial court erroneously limited his defense by instructing the jury that "[a]ny mental illness suffered by the defendant is not a defense in this case." We are not persuaded.

■ Defendant now contends that he objected to this instruction. However, at trial, defendant's counsel stated he "can't object" to it. Although counsel immediately afterward asked the court to allow him to argue to the jury that defendant's mental condition was the "bread" that wrapped around the "poison" of the medication, this request does not serve as a specific, clear, and contemporaneous objection to the court's instruction. *See People v. Miller*, 113 P.3d 743, 749 (Colo. 2005) ("constitutional harmless error analysis is reserved for those cases in which the defendant preserved his claim for review by raising a contemporaneous objection"). We will, therefore, review this instruction for plain error to determine whether defendant has shown "not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction." *Id.* at 750 (quoting *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001)).

## A. Introduction

To resolve this issue, we must determine whether the evidence of defendant's bipolar condition supported the defense of involuntary intoxication. If it did, the trial court's instruction was error, because it prevented the jury from evaluating the defense in light of relevant evidence.

We conclude, however, that the evidence of defendant's mental illness did not support that defense. Rather, under Colorado law, the evidence, based upon the nature of defendant's bipolar condition and the reason for which it was offered—to show that defendant could not conform his conduct to the requirements of the law—was some evidence of insanity. Because Colorado's law requires that evidence of insanity may only be offered if a defendant enters a special plea before trial, and because no such plea was entered in this case, the trial court correctly instructed the jury that defendant's mental illness was not a defense.

To reach our conclusion, we must first address the components of the defenses of involuntary intoxication and insanity, explain other circumstances in which evidence of a defendant's mental condition may be admissible, and then analyze the facts of this case under the controlling law. Last, we explain why the trial court's instruction did not deny defendant the ability to present an involuntary intoxication defense.

## B. What is Involuntary Intoxication?

■ Intoxication is defined as "a disturbance of mental or physical capacities resulting from the introduction of any substance into the body." § 18–1–804(4), C.R.S.2007. Involuntary intoxication is distinguished from self-induced intoxication. Intoxication is self-induced when a person knowingly introduces a substance into his or her body which "the defendant knows or ought to know [has] the tendency to cause intoxication." § 18–1–804(5), C.R.S.2007. Self-induced intoxication serves only as a defense to specific intent crimes. *People v. Low*, 732 P.2d 622, 628 (Colo.1987).

■ Involuntary intoxication is a defense to all crimes. *Id.* In order to justify instructing the jury about the defense of involuntary intoxication, a defendant must offer some credible evidence that shows (1) a

substance was introduced into the defendant's body; (2) the substance was not known to be an intoxicant, the defendant did not know it could intoxicate him or her, or it was taken because of medical advice; (3) the substance disturbed the defendant's mental or physical capacities; and (4) the disturbance resulted in the defendant's lack of capacity to conform his or her conduct to the law's requirements. *People v. Garcia*, 113 P.3d 775, 782–83 (Colo.2005).

■ Because involuntary intoxication is a disturbance of capacities, it is, by definition, temporary, similar to temporary insanity. *Id.; see also Low*, 732 P.2d at 627–28 ("involuntary intoxication establishes that the accused's 'derangement is without culpability and hence is to be dealt with the same as if it were the result of mental disease or defect'" (quoting R. Perkins & R. Boyce, *Criminal Law* 1005 (3d ed.1982)); "involuntary intoxication is 'a defense if it puts the defendant in such a state of mind, e.g., so that he does not know the nature and quality of his act or know that his act is wrong, in a jurisdiction which has adopted the M'Naghten test for insanity'" (quoting W. LaFave & A. Scott, *Handbook on Criminal Law* § 45, at 347)).

■ A special plea is not required to raise the defense of involuntary intoxication. *Garcia*, 113 P.3d at 783.

### C. Is Involuntary Intoxication Different from Insanity?

■ The defense of involuntary intoxication is distinct from the defense of insanity. In Colorado, there are two forms of insanity, which are defenses to all crimes. The first requires evidence to establish that (1) the defendant was diseased or defective in mind when he or she committed the offense; (2) the defendant's diseased or defective mental status was caused by a severely abnormal mental condition; (3) the mental condition grossly and demonstrably impaired the defendant's perception or understanding of reality; and (4) the impairment rendered the defendant incapable of distinguishing right from wrong with respect to the offense. *Id.;* § 16–8–101.5(1)(a), C.R.S.2007.

■ The second form of insanity requires evidence to show that the defendant (1) suffered from a condition of mind (2) caused by mental disease or defect (3) which prevented the person from forming a culpable mental state that is an essential element of the crime. § 16–8–101.5(1)(b), C.R.S.2007.

■ The defense of insanity requires the existence of a mental disease or defect—"[a] severely abnormal mental condition[ ] that grossly and demonstrably impair[s] a person's perception or understanding of reality"—that is "not attributable to the voluntary ingestion of alcohol or any other psychoactive substance." §§ 16–8–101.5(1)(a), (2)(b), 16–8–102(4.7), C.R.S.2007. "Intoxication does not, in itself, constitute mental disease or defect . . . ." § 18–1–804(2), C.R.S.2007; *see also Bieber v. People*, 856 P.2d 811, 815–17 (Colo. 1993) (settled insanity, or insanity arising from the long-term use of intoxicants, is not a valid insanity defense, and trial court properly denied an instruction on that defense). Because Colorado does not recognize the defense of temporary insanity, "the 'mental disease or defect' of insanity cannot be temporary in nature." *Garcia*, 113 P.3d at 782.

■ Insanity is an affirmative defense that may only be raised by a special plea entered before trial. §§ 16–8–103, 18–1–802(2)(a), C.R.S.2007. The entry of this special plea triggers a court-ordered mental examination of the defendant. § 16–8–105.5(1), C.R.S.2007. If the special plea is not entered, "evidence of insanity is irrelevant and inadmissible at a trial on the merits." *Low*, 732 P.2d at 632.

### D. For What Other Purposes Can Evidence of a Mental Condition Be Offered?

■ Evidence of an ongoing mental condition may be offered for reasons other than proving insanity. For example, in *People v. Requejo*, 919 P.2d 874, 877 (Colo.App.1996), a division of this court indicated that, in order to be found insane under either subsection of our insanity statute, "a person must be so ill as to be unable to recognize reality." There, the defendant offered evidence of his mild mental retardation to show that he did not process information quickly enough to notice

that his friend had stabbed the victim with a knife.

The trial court in *Requejo* concluded that this evidence was not admissible because the defendant had not entered a special plea under a prior version of section 16–8–101.5(1)(b). The division reversed, concluding that the evidence of the defendant's mild mental retardation was admissible without a special plea because the record did not indicate that the defendant's disability was a mental disease or defect; his disability was not severely abnormal; and the disability did not impair his perception of reality, because the evidence showed that he was "competent, sane, and not mentally ill." *Requejo*, 919 P.2d at 877; *see also People v. Vanrees*, 125 P.3d 403, 408–09 (Colo.2005)("mental slowness" that was not severely abnormal or that did not grossly and demonstrably impair perception or understanding of reality is not a mental disease or defect as defined by statute; "defendant's 'mental slowness' may be considered as factual evidence to support the argument that he lacked the required culpable mental state").

### E. How Would the Law Classify the Evidence of Defendant's Bipolar Condition Offered in this Case?

 Bipolar disorder is a mental illness, and, thus, a mental disease. *See Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 291 n. 5 (Colo.2005) ("Bipolar disorder is a biologically based mental illness that is a disease or illness in the same sense as cancer, diabetes, or heart disease."); *People v. Quick*, 713 P.2d 1282, 1285 n. 6 (Colo.1986) ("Bipolar disorder is listed in the diagnostic nomenclature of psychiatry as a mood or affective disorder."); *see also People v. Parrish*, 879 P.2d 453, 457 (Colo.App.1994) (terms "mental disease" and "mental illness" have been used interchangeably); *cf.* § 10–16–104(5.5)(a)(IV)(A), C.R.S.2007 (" '[b]iologically based mental illness' means ... bipolar affective disorder"). Therefore, bipolar disorder does not produce a temporary disturbance of capacities, in the sense that the word "temporary" is used in the involuntary intoxication statute. *See Garcia*, 113 P.3d at 782–83.

The evidence in this case was undisputed that defendant's mental illness was not temporary. Rather, the proof showed that (1) defendant's bipolar condition existed long before the events in this case; and, therefore, (2) the medication he took shortly before the events in this case did not cause his mental illness.

The thrust of defendant's claim is that "the deleterious effects of the preexisting [bipolar] condition [were] triggered or induced by the ingestion of the substance." Although there was evidence to show that defendant took medication before the offenses, the focus of defendant's argument is on the effect his mental illness had on the acts in question.

 Under sections 16–8–101.5(1)(a), 16–8–102(4.7), and *Garcia*, defendant's mental illness could have been offered as some evidence of insanity. *See* § 16–8–102(4.7) (definition of "mental disease or defect"). However, it was not evidence of involuntary intoxication, because it showed that defendant suffered from an ongoing mental illness, not a temporary disturbance of his mental or physical capacities caused by the medication.

Further, under the circumstances present in this case, evidence of defendant's mental illness was not offered for a purpose other than proving insanity. Unlike in *Requejo*, where the defendant contended that his disability did not impair his perception of reality, defendant contends here that the medication "triggered ... the deleterious effects" of his mental illness to the point that he lacked the capacity to conform his conduct to the law's requirements.

The purpose of introducing evidence of the "deleterious effects" of defendant's mental illness in the context of the defense of involuntary intoxication in this case was to show that the illness was the equivalent of a mental disease or defect, and that defendant could not know the nature and quality of his actions. *See Low*, 732 P.2d at 627–28. Thus, this evidence was offered to prove the equivalent of insanity, and not for some other purpose, such as supporting the argument that defendant lacked the culpable mental

state necessary to commit the crimes. *See Vanrees,* 125 P.3d at 408–09.

Had defendant entered a special plea before trial, he would have been entitled to present an insanity defense, and, thereby, argue to the jury that his mental illness supported it. However, he did not enter a special plea, and, therefore, he was barred from relying on his mental illness as a defense. *See Low,* 732 P.2d at 632.

Defendant cites several cases in support of his argument that the defense of involuntary intoxication incorporates the "interplay between mental illness and medication." We conclude this reliance is misplaced.

*Garcia* does not support defendant's position because, as indicated above, the evidence of defendant's mental illness did not satisfy the four-element test for involuntary intoxication because the illness was not temporary. *Garcia,* 113 P.3d at 782–83. *People v. Hari,* 218 Ill.2d 275, 295–96, 300 Ill.Dec. 91, 843 N.E.2d 349, 361 (2006), is likewise not pertinent because, although the defendant there had been diagnosed with a variety of conditions, including major depression and paranoid personality disorder, the combination of factors that the Illinois Supreme Court focused on in concluding that the defendant had raised an involuntary intoxication defense—medication, plus the defendant's "lack of sleep and alcohol dependency"—did not involve a mental disease or defect. *People v. Caulley,* 197 Mich.App. 177, 184, 494 N.W.2d 853, 857 (1992), is inapposite because the defendant there had asserted additional defenses, including Michigan's version of diminished capacity and insanity, and the defendant was required to show that he met the statutory definition of insanity to establish the defense of involuntary intoxication.

**F. Was Defendant Allowed to Present an Involuntary Intoxication Defense?**

■ Defendant here was not deprived of an involuntary intoxication defense. The jury was instructed on it. Accordingly, the jury was not prevented from considering whether the evidence showed that the medication, in a manner unrelated to defendant's mental illness, temporarily disturbed his mental or physical capacities, resulting in a lack of capacity to conform his conduct to the requirements of the law.

For example, a defense expert testified that, although it was unlikely, the medication, if outside the proper therapeutic range, could cause a person to "black out ... not know what [he or she is] doing and become violent." The instructions allowed the jury to consider this testimony in support of defense counsel's closing argument that the medication and "nothing else ... caused [defendant] to black out," and, therefore, defendant could not form the culpable mental states associated with the offenses.

Thus, because (1) the trial court's jury instruction that "[a]ny mental illness suffered by the defendant is not a defense in this case" was legally justified, and (2) the instruction did not prevent defendant from making arguments authorized by law, the giving of that instruction was not error, let alone plain error.

**III. Evidence of Prior Conduct**

Defendant claims that the admission of evidence about a previous domestic violence incident was erroneous under CRE 404(b) and 403. We disagree.

■ We review a trial court's decision to admit evidence for an abuse of discretion. A court abuses its discretion when the decision to admit evidence is manifestly arbitrary, unreasonable, or unfair. *People v. Pahlavan,* 83 P.3d 1138, 1140 (Colo.App.2003).

Here, defendant admitted during his testimony that he was convicted of a felony for second degree assault several years before the present offenses. Then, defendant's counselor admitted, on cross-examination by the prosecution, that he was working with defendant to eliminate defendant's violent behavior, specifically domestic violence. On redirect by defense counsel, the counselor explained that defendant was previously convicted of a felony for domestic violence.

■ Because defendant did not object to this evidence, we review it for plain error. *Miller,* 113 P.3d at 749. Plain error is both substantial and obvious. *Id.* at 750. It requires reversal if, after reviewing the com-

plete record, we conclude that the error "so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment." *Id.* (quoting *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003)).

The evidence of defendant's prior conviction was admissible because it was relevant for impeachment purposes. § 13–90–101, C.R.S.2007; *People v. Thompson,* 182 Colo. 198, 200, 511 P.2d 909, 910 (1973) (when defendant testifies, he or she may be examined on previous felony convictions).

Assuming, without deciding, that allowing the single reference to domestic violence during cross-examination of the therapist was an abuse of discretion, we conclude its admission does not undermine our confidence in the conviction's reliability. The reference was brief and isolated, and did not constitute a significant part of the prosecutor's cross-examination or closing argument.

## IV. Prosecution's Statements

Defendant contends the trial court erred when it allowed the prosecution to make comments about defendant's expert witness's financial motives and encouraged the jury to convict defendant to carry out the wishes of the community. We disagree.

Defense counsel did not object to either comment defendant now alleges constituted misconduct. Therefore, we review the statements for plain error. *Domingo–Gomez v. People,* 125 P.3d 1043, 1053 (Colo.2005); *Harris v. People,* 888 P.2d 259, 267 (Colo. 1995).

"Only prosecutorial misconduct [in closing argument] which is 'flagrantly, glaringly, or tremendously improper' warrants reversal." *Domingo–Gomez,* 125 P.3d at 1053 (quoting in part *People v. Avila,* 944 P.2d 673, 676 (Colo.App.1997)). Prosecutorial misconduct constitutes plain error only where there is a "substantial likelihood that it affected the verdict or deprived a defendant of a fair and impartial trial." *Harris,* 888 P.2d at 267 (quoting in part *People v. Constant,* 645 P.2d 843, 847 n. 7 (Colo.1982)). "Comments that were 'few in number, momentary in length, and were a very small

part of a rather prosaic summation' do not warrant reversal under the plain error standard." *Domingo–Gomez,* 125 P.3d at 1053 (quoting in part *People v. Mason,* 643 P.2d 745, 753 (Colo.1982)).

In our review, we consider the language used, the context in which the comments were made, and the strength of the evidence supporting conviction. *Domingo–Gomez,* 125 P.3d at 1053.

### A. Expert Witness's Motivation

Defendant contends the prosecution made inappropriate comments to the jury about defendant's expert witness and reversal is required. We disagree.

The prosecution may "point to circumstances that raise questions about, or cast doubt on, a witness's testimony, and may draw reasonable inferences from the evidence as to the credibility of witnesses." *People v. Welsh,* 176 P.3d 781, 788 (Colo.App. 2007); *see also Wilson v. People,* 743 P.2d 415, 418 (Colo.1987). However, a prosecutor may not "express a personal opinion as to the credibility of witnesses or the guilt of the defendant." *Welsh,* 176 P.3d at 788.

During voir dire, the prosecution made reference to the fact that defendant would be presenting an expert who had been "hired and paid by one side" to testify. During cross-examination of defendant's expert, the prosecution elicited testimony that the expert advertised in a lawyers' magazine; the advertisements referred to a website; the expert advertised to make money; and he was being paid around $7,000 for his efforts in the case. The prosecution also presented copies of the advertisements, printed pages from the website, and a bill for the expert's services in the case.

A witness may be cross-examined to point out potential bias. *See People v. Taylor,* 190 Colo. 210, 212–13, 545 P.2d 703, 705–06 (1976) ("Within broad limits, any evidence tending to show bias or prejudice, or to throw light upon the inclinations of witnesses, may be permitted."). Cross-examining an expert about his or her fees is an acceptable way to demonstrate bias. *See*

*Avila,* 944 P.2d at 676 (cross-examination of an expert concerning fees was not plain error); *see also United States v. Mullins,* 446 F.3d 750, 762 (8th Cir.2006) (not improper for prosecutor to point out fees of defense expert); *State v. Nicholson,* 355 N.C. 1, 44, 558 S.E.2d 109, 139 (2002)(compensation of defendant's expert is an appropriate issue for cross-examination); 3 Barbara E. Bergman & Nancy Hollander, *Wharton's Criminal Evidence* § 13:18, at 487–88 (15th ed.1999) (collecting cases); *cf.* C.R.C.P. 26(a)(2)(B)(I) (parties must disclose compensation paid for expert "study and testimony").

Relying on cases from other jurisdictions, defendant contends that the prosecution denigrated the defense by "insinuating" that the expert concocted or colored his testimony in exchange for his fee and the prospect of future work. *See Commonwealth v. Shelley,* 374 Mass. 466, 470, 373 N.E.2d 951, 954 (1978)("prosecutor's remarks as to the experts were based on facts not in evidence" and prosecution called expert witnesses "mercenary soldier[s]" and "prostitute[s]"); *State v. Vines,* 105 N.C.App. 147, 156, 412 S.E.2d 156, 162–63 (1992) (prosecutor argued doctor was motivated by pay and claimed "you can get a doctor to say just about anything these days"); *State v. Smith,* 167 N.J. 158, 182–85, 770 A.2d 255, 271–272 (2001) (prosecution's closing remarks suggested "hefty fees" would influence experts' testimony because they would want to be hired again by defense counsel); *Martinez v. State,* 984 P.2d 813, 826 (Okla.Crim.App.1999)(clearly improper to say defense counsel sought to "[b]ring this guy in here from Ohio, pay him to come in here to testify. He's an expert. Here's what we need to testify. Here's your ten grand. Thank you.").

Here, unlike in the cases upon which defendant relies, the prosecutor pointed out the prospect that the expert was biased because he had been paid, but the prosecution did not make any reference to the expert's pay or bias in opening statement or closing argument. Although the prosecution impeached the expert as permitted by the law, it made no prejudicial comments denigrating the expert. Accordingly, there was no prosecutorial misconduct upon which a claim of plain error can be based.

### B. Community's Wishes

Defendant contends the prosecution also made improper argument when it told the jury:

> Now, I speak on behalf of the People of the State of Colorado, that's my job. And the People of the State of Colorado request that you find the defendant guilty.

We do not find reversible error.

■ "A prosecutor should not use arguments calculated to inflame the passion or prejudices of the jury." *People v. Clemons,* 89 P.3d 479, 483 (Colo.App.2003). Statements that encourage a jury to convict the defendant in order to carry out the wishes of the community are improper. *Id.*

■ However, here the prosecutor's comment merely identified his "client," the People. This was a comment on the prosecutor's role in the trial, not a statement calculated to inflame the jury's passion or prejudices by appealing to the jury to consider the community's wishes.

■ A criminal prosecution is brought in the name of the People of the State of Colorado. Colo. Const. art. VI, § 22 ("all prosecutions shall be carried on in the name and by the authority of 'The People of the State of Colorado'"). A prosecutor is the People's representative in criminal cases. *People ex rel. Sandstrom v. District Court,* 884 P.2d 707, 711 (Colo.1994) (a district attorney's duties include representing the People in enforcing Colorado's laws). Thus, the prosecutor's comment was not error. *See Stephens v. State,* 975 So.2d 405, 420–21 (Fla.2007)(statement "[m]y job is to represent the State of Florida to seek justice" was made in response to defense counsel's closing argument, and was not improper).

■ Even assuming that this statement was improper, we conclude that it did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the jury's verdict. *Welsh,* 176 P.3d at 789. The comment was brief and isolated, and we find there was not a substantial likelihood

that the comment affected the verdict or deprived defendant of a fair trial. Therefore, the statement was not plain error. *See Domingo–Gomez,* 125 P.3d at 1053; *Harris,* 888 P.2d at 267.

The judgment is affirmed.

Judge ROY and Judge KAPELKE * concur.