The petitioner appeals from a judgment, after a 2016 jury trial, determining that he remains a sexually dangerous person (SDP) and should remain civilly committed to the Massachusetts Treatment Center (MTC). See G. L. c. 123A, § 9. On appeal he contends that the judge abused his discretion by admitting in evidence the transcript of the petitioner's testimony at a prior § 9 hearing and by allowing experts to use the label "high risk" in describing the petitioner's score on the Static-99R test. He also argues that the Commonwealth's closing argument was unfairly prejudicial. We affirm.
Background. The petitioner committed a variety of sex offenses between 1977 and 1997. Prior to his scheduled release from incarceration in 2008, the relevant district attorney petitioned to have him found an SDP and committed to the MTC. He was adjudicated an SDP and committed to the MTC in August, 2008. In 2013, he petitioned for release under § 9, but at trial was found to remain an SDP. He filed another § 9 petition for release, leading to the 2016 trial and this appeal.
Discussion. 1. Admission of 2013 transcript. The petitioner argues that the judge abused his discretion by admitting in evidence, on the Commonwealth's motion, a redacted transcript of the petitioner's testimony at the § 9 trial held in 2013. While conceding that admissions of a party opponent contained in a transcript are admissible, the petitioner contends that the transcript here was irrelevant and unduly prejudicial. We disagree.
As for relevance, the petitioner argues that his state of mind and understanding of his offenses as shown in the 2013 transcript had no bearing on whether he remained an SDP in 2016. But one of the petitioner's expert witnesses testified that the petitioner had come to grips with his history of offenses and that, as of 2012, the petitioner was offering "no more excuses" for those offenses, and was no longer an SDP as of 2013 or 2016. It was thus relevant that, as shown in the 2013 transcript, the petitioner testified that as he was pursuing one of his child victims, that victim "could have run" in order to escape him.
In a similar vein, the petitioner told a qualified examiner (QE) in 2016 that, during another of his offenses against a separate child victim, the petitioner had bought the child a soda.[2] The QE testified that the petitioner was no longer an SDP, as defined by statute, who required the confines of the MTC. It was thus significant that, in the 2013 transcript, the petitioner admitted that he had actually bought the child a beer, "as a way of grooming him." This material was plainly relevant to allow the jury to evaluate both the petitioner's veracity and the weight to be accorded the experts who testified in his support.[3]
The petitioner's undue prejudice argument asks us to assume that the 2016 jury (1) realized that the 2013 transcript was taken from a § 9 proceeding; (2) concluded that the 2013 jury must have found the petitioner to remain an SDP; and thus (3) took less seriously its own responsibility of determining as of 2016 that the petitioner was an SDP, knowing that the earlier jury had put its "stamp of approval" on his SDP status. Even if the jury recognized the source of the transcript,[4] however, we are unpersuaded that it would have led the jury to abdicate their responsibility to determine his SDP status as of 2016. During jury selection, potential jurors were informed, by agreement of the parties, that the petitioner had been found to be an SDP in 2008 and remained committed to the MTC as of the time of trial. More important, the judge repeatedly and emphatically instructed the jury, both before and after the close of evidence, that their task was to determine whether the petitioner "is today a sexually dangerous person," or was sexually dangerous "at the present time." We presume the jury followed these instructions, and we see no reason to think the jury gave any undue weight to prior determinations of sexual dangerousness.[5]
2. "High-risk" label. The petitioner argues that the judge abused his discretion by allowing various expert witnesses to testify, over objection, that the petitioner's score on the Static-99R risk assessment tool placed him in a "high-risk" category. The Commonwealth concedes, in light of Commonwealth v. George, 477 Mass. 331, 339-341 (2017), which was decided after the trial of this case, that the admission of the high-risk label was error. Significantly, however, in George the error was held nonprejudicial because "[t]he expert testimony regarding the defendant's Static-99R risk category was appropriately limited; it was presented as only one of many factors in the SDP calculus." Id. at 341.
The Commonwealth contends that, for the same reason, the error was nonprejudicial here, and we agree.[6] Nor are we persuaded by the petitioner's argument that the Commonwealth's case here was so much weaker than in George that the risk of prejudice from use of the high-risk label was greater here than in George. In sum, we are "sure that the error did not influence the jury, or had but very slight effect." Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445 (1983), quoting Kotteakos v. United States, 328 U.S. 750, 764-765 (1946). See Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).
3. Closing argument. Finally, the petitioner asserts that the Commonwealth's closing argument unfairly appealed to the jury's sympathy and unfairly disparaged the defense bar as well as one of the petitioner's expert witnesses. In response to the first two objections, the judge gave curative instructions to the jury. The petitioner did not renew his objection after those instructions, nor does he identify on appeal in what respect they were insufficient to cure any prejudice.
The most the petitioner argues is that the curative instruction regarding the claimed appeal to sympathy did not "directly address the improper appeal." But the judge clearly told the jury that closing arguments "are arguments" and "cannot be appeals to sympathy because sympathy has no part in your decision in this case." He continued, "You are judges of the facts. You have to be impartial and decide this case for or against one side based upon the facts." His charge also instructed the jury "not to be swayed by prejudice or by sympathy." Although the judge could have explicitly told the jury to ignore the challenged remarks, we are not persuaded that he abused his discretion in declining to do so.[7]
The claimed disparagement of the petitioner's expert witness, Dr. Plaud, consisted of a reference to him as "the defense bar's regular retained expert," their "million dollar man." The petitioner's objections to these remarks, insofar as they referred to Dr. Plaud rather than the defense bar, were overruled.[8] We see no abuse of discretion in that ruling as it applied to the "regular retained expert" comment. During the trial, Dr. Plaud had been impeached with evidence that, in SDP cases, he was hired to testify exclusively by offenders, that he would testify only if he found them not to be sexually dangerous, and that he had earned an average of $190,000 annually over the last seven years for such work. The petitioner's closing argument referred to Dr. Plaud as "independent," and the Commonwealth was entitled to respond.
The disparagement of Dr. Plaud as a "million dollar man" raises a closer question. While "[e]vidence of an expert's billing rate is admissible as evidence of bias and it is appropriate to remind the jury that an expert was retained by the defendant," Commonwealth v. Bishop, 461 Mass. 586, 598 (2012), it is improper to characterize an expert as a "hired gun," Commonwealth v. O'Brien, 377 Mass. 772, 777-778 (1979), whose testimony was "bought," at least where (as here) there is no evidence that the expert was paid more than his customary fee. Commonwealth v. Shelley, 374 Mass. 466, 469 (1978). The "million dollar man" comment was of a similar nature and may well have crossed the line into improper insinuation that Dr. Plaud tailored his testimony based on the amount he was paid in this case. However, the comment was one brief phrase in the Commonwealth's quite lengthy and detailed argument, covering twenty-six transcript pages. "[W]e are confident that the jury took the criticized argument with a grain of salt," Bishop, 461 Mass. at 598, and that any abuse of discretion in declining to give a curative instruction as to this remark was not prejudicial.
Judgment affirmed.

The statement appeared in the QE's report, which was admitted as an exhibit at trial.

Portions of the transcript were relevant, and the petitioner did not (and on appeal does not) identify any other specific portions as irrelevant. Thus, although the judge characterized it as "kind of unusual" to admit an entire transcript as admissions of a party opponent, the petitioner has not shown that the judge abused his discretion in doing so.

What the Commonwealth offered was a redacted version of the 2013 testimony, omitting portions that "neither [party's counsel] want[ed] the jury to see." The cover page of the transcript did not identify the nature of the proceeding from which it came. The judge offered to instruct the jury that they were not to speculate as to the purpose of the prior proceeding, but the petitioner did not request such an instruction. Nor did the petitioner seek to redact particular passages of the transcript that might have made it more evident to the jury that the transcript was from a § 9 proceeding. Indeed, one of the petitioner's own expert witnesses, Dr. Brown, told the jury that he had "testified in 2013 on [the petitioner's] case."

The petitioner also argues that the information in the transcript was cumulative. The petitioner did not raise this objection at trial, and on appeal he does not identify any particular passages that should have been excluded as cumulative, let alone any prejudice flowing from the admission of such passages. See Commonwealth v. McGee, 75 Mass. App. Ct. 499, 502 (2009) (judge's discretion to exclude cumulative evidence includes situations where it might cause undue prejudice); Commonwealth v. Davis, 54 Mass. App. Ct. 756, 764 (2002) ("Generally the admission of cumulative evidence does not constitute reversible error").

As in George, supra, a QE explained to the jury here that the Static-99R was an actuarial tool to measure sexual recidivism risk; that it "doesn't tell you everything you want to know"; and that he also considered "dynamic risk factors," including substance abuse history, deviant sexual interests, cognitive distortions, and treatment history. Other experts testified that they considered factors such as intimacy deficits, family history, education, disciplinary history, and release plans.

The remarks, which referred to the petitioner's past crimes as having "violated the right of children to feel safe in a variety of settings, in their own communities, in the most innocent of activities" and then mentioned the particular settings in which the crimes occurred, permissibly addressed the harm to be anticipated were the petitioner to reoffend. See McHoul, petitioner, 445 Mass. 143, 153 (2005) (fact finder in SDP case may consider likelihood of future "psychological, mental or emotional" injury); Commonwealth v. Boucher, 438 Mass. 274, 276 (2002) (in determining likelihood of reoffense in SDP case, fact finder may consider "the seriousness of the threatened harm").

As alluded to above, the judge did instruct the jury that "it's not proper to comment on the defense bar.... You can comment on the witnesses, but not the defense bar in general."