2014 COA 113

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jeremiah LOVATO, Defendant–Appellant.**

**Court of Appeals No. 11CA1227**

Colorado Court of Appeals,
Div. II.

Announced September 11, 2014

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE CASEBOLT

¶ 1 Defendant, Jeremiah Lovato, appeals the judgment of conviction entered on jury verdicts finding him guilty of five counts of child abuse resulting in serious bodily injury, one count of child abuse, four counts of first degree assault, three counts of second degree assault, one count of third degree assault, one count of sexual assault on a child by one in a position of trust, violation of bail bond conditions, and violation of a protection order. He asserts that the sexual assault on a child statute is unconstitutional as applied to him, that the evidence is insufficient to support his conviction for sexual assault on a child, and that the prosecutor made improper comments during opening statement and closing argument. Defendant also asserts that three of his convictions for second degree assault must merge into three convictions for first degree assault, and that the mittimus contains a clerical error.

¶ 2 We agree with defendant that his convictions for second degree assault must merge with the convictions for first degree assault and that the mittimus must be corrected to delete a conviction for child abuse resulting in death. We reject defendant's remaining contentions and affirm the judgment in all other respects.

I. Background

¶ 3 Defendant adopted the male victim when the victim was thirteen. For several months thereafter, they lived in Moffat County. The evidence at trial revealed that the relationship started out normally, but defendant soon assigned chores to the victim and "punished" him if he failed to complete them to defendant's satisfaction. The punishment eventually included beating the victim with a belt, punching him with a fist, and striking him with a meat tenderizer.

¶ 4 The victim was unable to recall specific dates of individual beatings. Rather, he testified that the beatings happened "all the time," and that if he would cry out or make noise during a beating, defendant would clamp his hand over the victim's mouth. As a result, the victim learned not to make any noise during the beatings. He did not call for help or report the abuse to police because he was afraid the beatings would get worse.

¶ 5 When he was questioned by Moffat County teachers, counselors, or social services workers about marks they noticed on his face, or the reasons for his frequent absences from school, the victim testified he would provide an excuse that defendant had fabricated and directed him to use, and he would not tell the truth because he was afraid. Defendant ultimately withdrew the victim from public school and began home schooling him.

¶ 6 Defendant and the victim moved to Colorado Springs where, the victim testified, the abuse got worse. Defendant began using a wooden board or stick to administer daily beatings. For the last months that he lived with defendant, the victim testified the beatings happened several times each day. Defendant threatened the victim by telling him that if defendant ever went to prison for the

abuse, he would come after the victim upon his release.

¶ 7 In Colorado Springs, defendant would make the victim go to the basement and lie down naked on the floor on his stomach. Defendant then would beat the victim, usually with a wooden board, aiming primarily at his back and buttocks. If the victim squirmed or made noise, defendant would choke him, stomp on his back, or turn him over and stomp on his testicles. The victim testified that defendant would specifically target his testicles.

¶ 8 The victim finally ran away from home and contacted the police. The prosecution charged defendant with approximately twenty-seven charges based on the reported abuse. In addition to presenting the victim's testimony, at trial, the prosecution presented photographs of the injuries and testimony from several doctors who had examined the victim. This evidence demonstrated, among other things, that the victim had suffered from a constant wound on his buttocks that did not fully heal over several months, together with bruising on his scrotum.

¶ 9 Defendant essentially acknowledged his actions but contended that they constituted appropriate discipline and urged the jury to consider lesser included offenses. A jury convicted defendant on sixteen counts and this appeal followed.

## II. Constitutionality of Statutes

¶ 10 Defendant asserts that his conviction for sexual assault on a child for stomping on the victim's testicles violates his right to equal protection as applied in this case because the child abuse statute prohibits the same conduct and carries a lesser penalty, inasmuch as it allows a determinate sentence instead of an indeterminate one. He also asserts the sexual assault statute is unconstitutionally vague. We reject the contentions.

### A. Equal Protection

#### 1. Preservation and Standard of Review

¶ 11 The parties agree, and we concur, that defendant preserved this issue for appellate review.

¶ 12 We review the constitutionality of a statute, both facially and as applied, de novo. *People v. Perez–Hernandez*, 2013 COA 160, ¶ 10. Because statutes are presumed to be constitutional, to succeed with an as-applied challenge, " 'a defendant has the burden of establishing the unconstitutionality of a statute, as applied [to him], beyond a reasonable doubt.' " *Id.* at ¶¶ 10–11 (quoting *People v. DeWitt*, 275 P.3d 728, 731 (Colo. App.2011)).

#### 2. Law

¶ 13 "The constitutional right to equal protection guarantees like treatment of persons who are similarly situated." *People v. Friesen*, 45 P.3d 784, 785 (Colo.App.2001). Thus, "equal protection is violated if different statutes prohibit the same criminal conduct but impose different penalties. In considering equal protection challenges, the supreme court has emphasized that equal protection is offended only when statutes forbid *identical* conduct." *People v. Jauch*, 2013 COA 127, ¶ 9, —— P.3d —— (citation omitted).

¶ 14 In an equal protection challenge that does not concern a traditionally suspect class or a fundamental right, as here, we apply a rational basis standard of review. *See People v. Dean*, 2012 COA 106, ¶ 13, 292 P.3d 1066 (*cert. granted* Nov. 12, 2013), "Under rational basis review, the challenging party must demonstrate beyond a reasonable doubt that the classification bears no rational relationship to a legitimate legislative interest or government objective, or that the classification is unreasonable, arbitrary, or capricious." *Id.*; *see also Jauch*, ¶ 10 ("Statutory classifications of crimes do not violate equal protection if the differences between the proscribed conduct are both real in fact and reasonably related to the general purposes of criminal legislation.").

¶ 15 "The General Assembly is free to establish more severe penalties for conduct that it believes has graver consequences, even if the conduct varies only by a matter of degree." *Jauch*, ¶ 10, *see also People v. Thurman*, 948 P.2d 69, 73 (Colo. App.1997) ("It is the prerogative of the General Assembly to establish the penalties

which apply to particular criminal offenses and it is entitled to establish more severe penalties for acts which it determines have greater social impact and more grave consequences."). Therefore, equal protection is not violated simply because a single criminal act may violate more than one criminal statute. *See Jauch,* ¶ 10.

### 3. Application

¶ 16 The prosecution charged defendant with sexual assault on a child (SAOC) by one in a position of trust for stomping on the victim's testicles. As pertinent here, any actor

> who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child by one in a position of trust if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim.

§ 18–3–405.3(1), C.R.S.2013. The term "sexual contact" means "the knowing touching of the victim's intimate parts by the actor . . . if that sexual contact is for the purposes of sexual arousal, gratification, or abuse." § 18–3–401(4), C.R.S.2013. The term "intimate parts" means "the external genitalia . . . or the buttocks . . . of any person." § 18–3–401(2). A person convicted of sexual assault faces an indeterminate sentence in the presumptive range up to his natural life. § 18–1.3–1004(1), C.R.S.2013.

¶ 17 Child abuse occurs when a person "causes an injury to a child's life or health . . . or engages in a continued pattern of conduct that results in . . . cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in . . . serious bodily injury to a child." § 18–6–401(1)(a), C.R.S. 2013. When a perpetrator acts knowingly or recklessly and the child abuse results in serious bodily injury to the child, it is a class 3 felony. § 18–6–401(7)(a)(III). A person convicted of such child abuse will be sentenced to a determinate sentence. *See* § 18–1.3–401, C.R.S.2013.

¶ 18 As defendant concedes, the statutes do not violate equal protection on their face because they do not proscribe identical conduct. Notably, the SAOC charge requires "sexual contact" and the child abuse statute requires "serious bodily injury."

¶ 19 Defendant argues, however, that the record contains no evidence of a sexual motivation on his part, nor did the prosecution argue a sexual motive. Instead, he asserts, the prosecution argued that touching the victim's genitals merely for purposes of physical abuse satisfied the definition of sexual contact. But defendant contends that the adjective "sexual" in the definition of sexual contact modifies all three nouns, meaning that the contact must be for the purposes of sexual arousal, sexual gratification, or sexual abuse. Thus, he argues that the sexual contact must be for the purpose of *sexual* abuse under the plain terms of the definitional statute—a phrase he equates with abusive conduct that has a sexual impetus (or intent). He further argues that the act of stomping on the victim's testicles was simply part of a larger beating and therefore had to be charged under the child abuse statute instead of the SAOC statute. He asserts that, unless there is a "sexual motivation" interpretation given to the SAOC statute, the two statutes prohibit identical conduct as applied to his case.

#### a. Sexual Contact Definition

¶ 20 Defendant's contention requires us first to determine whether the adjective "sexual" in section 18–3–401(4) modifies not only "arousal," but also "abuse." We conclude that it does.

¶ 21 In construing a statute, a court's primary task is to ascertain and give effect to the intent of the General Assembly. To do so, we must first look to the language of the statute itself, giving the words their commonly accepted meaning and avoiding a strained or forced interpretation. When the language of the statute is clear, so that the legislative intent can be discerned with reasonable certainty, there is no need to resort to other rules of statutory construction. *See State v. Nieto,* 993 P.2d 493, 500 (Colo.2000).

¶ 22 If the General Assembly's intended meaning of a phrase is doubtful, the court should consider the language in the

context of the statute and by reference to the common meaning of words or phrases associated with the statute at issue. *Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 601 (Colo. App.2000); *see also* § 2–4–101, C.R.S.2013 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Fogg v. Macaluso*, 892 P.2d 271, 274 (Colo.1995).

¶ 23 When the statutory language is susceptible to more than one reasonable interpretation, leading to different results, the statute is ambiguous. In that event, a court must look beyond the language and consider other factors, such as the statute's legislative history and the objective sought to be achieved by the legislation. *See Nieto*, 993 P.2d at 500–01; *see also* § 2–4–203(1), C.R.S. 2013.

¶ 24 Here, the particular phrase employs an adjective (sexual) before a series of three nouns (arousal, gratification, and abuse). There is no doubt that the adjective applies to the term "arousal," because it appears immediately before that word in the statute and thus modifies and describes it. And when there is a series of words or a phrase with an adjective at the beginning,

> [m]ost readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears. For example, if a writer were to say, "The orphanage relies on donors in the community to supply the children with used shirts, pants, dresses, and shoes," the reader expects the adjective "used" to modify each element in the series of nouns, "shirts," "pants," "dresses," and "shoes." The reader does not expect the writer to have meant that donors supply "used shirts," but supply "new" articles of the other types of clothing.

*Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 114 Cal.App.4th 548, 7 Cal.Rptr.3d 844, 849 (2003); *see also Lewis v. Jackson Energy Coop. Corp.*, 189 S.W.3d 87, 92 (Ky. 2005) ("[A]n adjective at the beginning of a conjunctive phrase applies equally to each object within the phrase. In other words, the first adjective in a series of nouns or phrases modifies each noun or phrase in the

following series unless another adjective appears."); *In re Estate of Pawlik*, 845 N.W.2d 249, 252 (Minn.Ct.App.2014) (Under the series-qualifier canon of statutory construction, "'when several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.'" (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920))); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.").

¶ 25 Furthermore, the statute at issue defines "*sexual* contact," not simply "contact." It would be incongruous to say that such contact could occur without having a "sexual element." In addition, the definition appears in a section under the broad heading "Unlawful *Sexual* Behavior," for Part 4 of the statute.

¶ 26 For all these reasons, we conclude that "sexual" modifies "abuse" in the definition of "sexual contact" contained in section 18–3–401(4). *See United States v. De La Cruz–Garcia*, 590 F.3d 1157, 1160 (10th Cir. 2010) (noting that section 18–3–401(4) is limited to sexual acts); *State v. Riolo*, 50 Kan. App.2d 351, 330 P.3d 1120, 1124 (2014) (holding that "the *touching for the purposes of abuse* language [in section 18–3–401(4) ] means touching for the purposes of sexual abuse, not abuse in general").

¶ 27 Having determined that there must be a touching for the purpose of sexual abuse for there to be sexual contact, we next turn to defendant's contention that the prosecution must demonstrate that he had a "sexual motive."

### b. Sexual Motivation

¶ 28 As we understand defendant's assertion, he contends that to satisfy the elements of sexual assault on a child, he must have made sexual contact with the victim while having a sexual motivation. He ap-

pears to argue that such a sexual motive must be similar to sexual arousal or sexual gratification. We reject this assertion.

¶ 29 Defendant's contention is similar, if not identical, to an assertion raised in *People v. White*, 179 Cal.App.3d 193, 224 Cal.Rptr. 467 (1986), a case that also involved a statute with language very similar to section 18–3–401(4). There, the defendant was convicted of violating California Penal Code, section 289(a), which, at the time of the defendant's offense, proscribed "penetration ... of the ... anal opening[ ] of another person, by any foreign object ... accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury ... for the purpose of sexual arousal, gratification, or abuse," arising from his forceful insertion of a foreign object or his finger into the anus of his seventeen-month-old stepdaughter. *Id.* at 470–71. The defendant asserted that the statute "requires that the proscribed act be motivated or accomplished by some kind of sexual intent," and that "the evidence was insufficient as a matter of law to prove that [his] 'intent was to gain sexual arousal or gratification or to subject the victim to *sexual abuse or sexual mistreatment.'*" *Id.* at 474.

¶ 30 Part of the defendant's argument was that the language of section 289(a) required that he have acted "for the purpose of sexual arousal, gratification or abuse" and, like defendant here, he asserted that the word "sexual" modified "abuse." *Id.* at 475. The court agreed with that contention, but nevertheless concluded that no specific sexual motivation or lewdness by the defendant was required. *Id.* at 476. In doing so, the court adopted the People's response to the defendant's argument, which had argued:

> While [the defendant's] interpretation of subdivision (a) is grammatically correct, the conclusion he reaches on the basis of this interpretation is flawed. Under subdivision (a) the penetration of the anus must be for sexual arousal, sexual gratification *or* sexual abuse. The People's theory in this case was that [the defendant's] purpose in assaulting [the stepdaughter] was the latter. To 'abuse' someone is to hurt

them by treating them badly, or to cause pain or injury through mistreatment. When such mistreatment is directed to a victim's sexual or 'private' parts, the resulting conduct would certainly be considered sexual abuse.

[The defendant's] argument that a 'sexually motivated intent' is required under subdivision (a) interprets the section too narrowly. The meaning [the defendant] implies is covered by the two other purposes mentioned in the statute, sexual arousal and sexual gratification. Indeed, [the defendant] may not have had either of these 'sexually motivated intents' and he still would have violated the subdivision if his intent was to hurt [the stepdaughter] sexually, i.e., in a sexual or 'private' area of her body. The evidence of the forcefulness of the penetration, and its location, certainly provides ample support for the jury's verdict.

[The People's] position is, essentially, that abuse or mistreatment in the manner described in subdivision (a) is, by definition, *sexual* abuse simply because of the body parts [a]ffected, where the intent is in fact to 'abuse,' i.e., to hurt, cause pain to or injure. Surely there are many examples of sexual penetration of others, even of small children, which would not violate the statute because they are not done to arouse, gratify *or abuse*. These would include insertion of a thermometer or a suppository or other medicine. Since these penetrations are not for any proscribed purpose they are not in violation of subdivision (a). But when a penetration is accomplished for the purpose of causing pain, injury or discomfort, it becomes sexual abuse, even though the perpetrator may not necessarily achieve any sexual arousal or gratification whatsoever.

*Id.* at 475–76.

¶ 31 The court further noted that it could not discern what kind of sexual passion, lust, or lascivious intent could be involved in sexual abuse other than that encompassed in the term "sexual arousal" and "sexual gratification," and stated that the statute, by using the disjunctive word "or" to separate sexual abuse from sexual arousal or sexual gratifica-

tion, clearly did not intend a redundancy. *Id.* at 476. It concluded that "the term 'abuse' imports an intent to injure or hurt badly, not lewdness.... [I]t is the nature of the act that renders the abuse 'sexual' and not the motivations of the perpetrator." *Id.*

¶ 32 We agree with the *White* court's analysis and conclusions and adopt and apply them here. Even in deciding that the term "abuse" in section 18–3–401(4) means "sexual abuse," and accepting that "abuse" means pain, injury, or discomfort, we nonetheless discern no statutory requirement of a "sexual motivation" on the part of a perpetrator under this definition.

■ ¶ 33 Furthermore, defendant's conduct here meets these definitions because there was evidence that defendant specifically targeted the victim's intimate parts for the purpose of causing harm or pain. Although the conduct was part of a greater physical beating, defendant would purposefully stop the general abuse in order to attack the victim's groin. As the victim testified, the abuse was apparently done to teach him a different "lesson": that he should not squirm or make noise during the general beating.

### c. Identical Conduct

■ ¶ 34 The question remains whether the SAOC statute, as we have construed it, punishes conduct identical to that proscribed by the child abuse statute and thus runs afoul of equal protection as applied to defendant. We conclude it does not.

¶ 35 In a similar context, the supreme court addressed whether the SAOC statute violated equal protection principles when used to charge conduct that could have been charged as sexual assault in the third degree by a guardian or a person otherwise responsible for the general supervision of the victim's welfare, a misdemeanor carrying a significantly lesser penalty. *People v. Madril*, 746 P.2d 1329, 1332 (Colo.1987). There, the defendant was charged with SAOC for having subjected a child of about ten years of age to sexual contact. *Id.* at 1330. SAOC required that the victim of the assault be less than fifteen years of age, while the third degree sexual assault statute required the

victim to be under eighteen years old. *See* § 18–3–405(1), C.R.S.2013; ch. 171, sec. 1, § 18–3–404(1)(e), 1975 Colo. Sess. Laws 629.

¶ 36 The supreme court reaffirmed that the differences between the two statutes were real in fact, concluding:

> Although the ... elements of [the two statutes] are not mutually exclusive[,] ... that fact does not give rise to a constitutional infirmity. When the total elements comprising each offense are considered— especially, as pertinent here, the age of the victim, the age disparity between the offender and the victim, and the particular relationship between the offender and the victim—we have no hesitation in concluding that criminal conduct prohibited by one statute is readily distinguishable from the criminal conduct prohibited by the other statute. These differences in both definition and penalty are reasonably related to the state's legitimate interest in protecting children against sexual abuse by persons who, by reason of a special relationship to a child, assume varying duties of care and responsibility toward the child.

*Madril*, 746 P.2d at 1334.

¶ 37 Under the same reasoning, the statutes here proscribe different conduct and have different legislative purposes. Although defendant's conduct fits the conduct prohibited by both the SAOC statute and the child abuse statute, the SAOC statute requires sexual contact while the child abuse statute requires that the defendant cause serious bodily injury to the child's life or health. These differences, among others, demonstrate the legislature's intent to protect children, via the SAOC statute, from both the emotional and sometimes physical harm that comes from abuse to the child's intimate parts, separately from the child abuse statute, which protects children from direct physical injury and endangerment to life or health.

¶ 38 The differences between the SAOC statute and the child abuse statute are both real in fact and reasonably related to the legislature's purposes of protecting children from various categories of harm. *See Jauch*, ¶ 9.

¶ 39 Finally, although we construe defendant's argument regarding the charging discrepancy between the assault on the buttocks as child abuse and the assault on the testicles as sexual assault to refer to his constitutional vagueness challenge that we address next, insofar as he intended to include the argument as part of his equal protection contention, we note that prosecutorial discretion and "'the conscious exercise of selectivity in the enforcement of laws is not in itself a constitutional violation of equal protection.'" *People v. Hughes*, 946 P.2d 509, 516 (Colo. App.1997) (quoting *People v. Thorpe*, 641 P.2d 935, 940 (Colo.1982)), *overruled on other grounds by Valdez v. People*, 966 P.2d 587, 592 (Colo.1998).

### B. Vagueness and Due Process

¶ 40 Defendant also asserts that the definitional statute violates due process because it is unconstitutionally vague, as applied to him. Specifically, he argues that if the SAOC statute includes the conduct at issue, the statute fails to give notice of the prohibited conduct and fails to provide any reasonable standards to prevent arbitrary and discriminatory enforcement. We disagree.

### 1. Preservation and Standard of Review

¶ 41 Defendant preserved this contention in the trial court. We review the constitutionality of the statute de novo. *People v. Villa*, 240 P.3d 343, 352 (Colo.App.2009).

¶ 42 Statutes are presumed to be constitutional, and a party attacking a statute bears the burden of showing that it is unconstitutional beyond a reasonable doubt. *Id.* at 352–53.

### 2. Law

¶ 43 The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Vague laws offend due process because they (1) fail to give fair notice of the conduct prohibited, and (2) do not supply adequate standards for those who apply them in order to prevent arbitrary and discriminatory enforcement." *People v. Baer*, 973 P.2d 1225, 1233 (Colo.1999). "As to a vagueness challenge, the basic inquiry is whether the law forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." *A.P.E. v. People*, 20 P.3d 1179, 1190 (Colo. 2001) (internal quotation marks omitted).

¶ 44 "However, due process does not require mathematical exactitude in legislative draftsmanship." *People v. McIntier*, 134 P.3d 467, 474 (Colo.App.2005). "A law is unconstitutional only if it 'is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Id.* (quoting *People v. Hickman*, 988 P.2d 628, 643 (Colo.1999)). "So long as a statute permits persons of ordinary intelligence to distinguish between permissible and illegal conduct and provides workable standards for those responsible for the enforcement and application of the law, due process of law will be satisfied." *People v. West*, 724 P.2d 623, 626 (Colo.1986).

¶ 45 "[I]f a challenged statute is capable of several constructions, one of which is constitutional, the constitutional construction must be adopted." *People v. Houser*, 2013 COA 11, ¶ 41, 337 P.3d 1238 (internal quotation marks omitted).

¶ 46 "[U]nder the Colorado Constitution's separation of powers principle, a prosecutor, as an executive branch official, may not be limited in the exercise of his or her discretion by judicial intervention. Such discretion is protected even when it results in the possibility of a longer sentence." *People v. Valles*, 2013 COA 84, ¶ 14, —— P.3d ——· (citation omitted). When a criminal act violates more than one criminal statute, it is well established that "the choice of charges generally represents a proper exercise of prosecutorial discretion." *People v. Carlson*, 72 P.3d 411, 418 (Colo.App.2003).

### 3. Application

¶ 47 Defendant contends that he could not have reasonably foreseen that he was committing sexual assault on a child by

stomping on the victim's testicles as part of a more general beating and without any sexual motivation. We disagree.

¶ 48 The plain language of the definitional statute indicates that sexual contact occurs when the defendant touches an intimate part of the victim for purposes of sexual arousal, gratification, *or abuse.* A reasonable person could determine that he would violate this statute by targeting a victim's intimate parts for purposes of causing physical harm. As discussed above, neither the SAOC statute nor the definitional statute contains a requirement of a "sexual motivation," as defendant urges. Rather, the mens rea for the crime is "knowingly" subjecting the victim to any sexual contact, defined as a "knowing touching" for the purpose of sexual abuse.

¶ 49 A reasonable person could also determine that, when a purpose of "sexual abuse" is required, specifically targeting a victim's intimate parts for the purpose of causing pain could constitute sexual abuse, or abuse to the victim's sexual organs.

¶ 50 Because the SAOC statute and the definitional statute contain workable standards for a person of ordinary intelligence to determine permissible and prohibited conduct, we conclude that neither statute is void for vagueness as applied to defendant's conduct. *See People in Interest of J.A.,* 733 P.2d 1197, 1198–99 (Colo.1987) (upholding the constitutionality of the definitional statute against vagueness challenges).

¶ 51 Defendant also appears to assert that the definitional statute is vague as evidenced by the prosecution's decision to charge defendant's assault on the victim's buttocks under the child abuse statute while charging the assault on the victim's testicles under the SAOC statute. We reject this contention.

¶ 52 While we agree with defendant that either assault could have been charged under the child abuse statute or the SAOC statute, the charging decision was a proper exercise of prosecutorial discretion. *See Valles,* ¶ 14. We are not required to speculate why the prosecution chose to charge these two assaults in the manner it did. We simply note that differences existed that could have led the prosecution to charge the conduct differ-

ently, including the increased sensitivity of the victim's sexual organs in comparison to his buttocks, and defendant's conscious choice to stop the general beating in order to specifically target the victim's testicles to induce additional pain.

¶ 53 In sum, neither the SAOC statute nor its definitional counterpart is unconstitutionally vague as applied to defendant's conduct.

### III. Sufficiency of the Evidence

¶ 54 Defendant asserts that there is insufficient evidence to sustain the jury's verdict finding him guilty of sexual assault on a child. Specifically, he contends that the record contains no evidence that his contact with the victim's genitals constituted "sexual" contact. As we understand this contention, defendant is again relying on his interpretation of the "sexual contact" definition discussed above. Accordingly, for the reasons stated in the previous section, we reject defendant's sufficiency of the evidence contention.

### IV. Prosecutorial Misconduct

¶ 55 Defendant asserts that his convictions must be reversed because the prosecutor's repeated statements of personal opinion, inflammatory remarks, and appeal to the jury to send a message to the community deprived him of his rights to a fair trial by a fair and impartial jury. We reject this contention.

### A. Preservation and Standard of Review

¶ 56 When reviewing a claim of prosecutorial misconduct on appeal, we first determine if misconduct occurred. *People v. Douglas,* 2012 COA 57, ¶ 57, 296 P.3d 234. If we conclude that the prosecutor made improper statements or argument, we then determine whether the conduct warrants reversal according to the proper standard of review. *Id.* at ¶ 58.

¶ 57 Where the prosecutor's alleged misconduct is not of constitutional magnitude, " '[w]hether a prosecutor has engaged in misconduct is an issue within the trial court's discretion.' " *People v. Rhea,* 2014 COA 60, ¶ 42, 349 P.3d 280 (alteration in original) (quoting *People v. Reed,* 2013 COA

113, ¶ 12, 338 P.3d 364). If defense counsel lodged a contemporaneous objection at trial, we review the alleged misconduct for harmless error. *Id.* When reviewing preserved issues, "the trial court's rulings on prosecutorial misconduct 'will not be disturbed by an appellate court in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice.' " *Id.* (quoting *People v. Moody,* 676 P.2d 691, 697 (Colo.1984)).

¶ 58 If a defendant does not object to the alleged misconduct at trial, we review for abuse of discretion and plain error. *Id.* at ¶ 43.

> To constitute plain error, misconduct must be flagrant or glaring or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. [P]rosecutorial misconduct in closing arguments rarely ... is so egregious as to constitute plain error.

*Id.* (alteration in original) (internal quotation marks and citations omitted); *People v. Sommers,* 200 P.3d 1089, 1096 (Colo.App.2008) ("Prosecutorial misconduct constitutes plain error only where there is a substantial likelihood that it affected the verdict or deprived a defendant of a fair and impartial trial." (internal quotation marks omitted)).

¶ 59 Although defendant asserts that a number of statements constituted prosecutorial misconduct, he objected to only two statements at trial. We will review the two preserved issues for harmless error and review the remaining statements for plain error.

### B. Law

¶ 60 "In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction." *People v. Hogan,* 114 P.3d 42, 55 (Colo.App. 2004).

¶ 61 "Opening statement is limited to the facts that the party intends to prove at trial. Remarks later proved to be unsupported by the evidence will ordinarily constitute reversible error if there has been an affirmative showing of bad faith and manifest prejudice." *People v. Wallace,* 97 P.3d 262, 269 (Colo.App.2004).

¶ 62 Final argument may properly include the facts in evidence and any reasonable inferences from those facts. *Domingo–Gomez v. People,* 125 P.3d 1043, 1047 (Colo.2005); *People v. Beilke,* 232 P.3d 146, 154 (Colo.App.2009).

> In closing argument, counsel may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance, so long as he or she does not thereby induce the jury to determine guilt on the basis of passion or prejudice, attempt to inject irrelevant issues into the case, or accomplish some other improper purpose.

*People v. Allee,* 77 P.3d 831, 837 (Colo.App. 2003) (holding that the prosecutor's statement that "the case could have been a 'made for TV movie' " was a proper oratorical embellishment).

¶ 63 "A prosecutor is afforded considerable latitude in replying to an argument by defense counsel. In considering whether prosecutorial remarks are improper, the reviewing court must weigh the effect of those remarks on the trial, and also take into account defense counsel's 'opening salvo.' " *People v. Perea,* 126 P.3d 241, 247 (Colo.App. 2005) (internal quotation marks omitted).

¶ 64 "Given the sometimes fuzzy line between hard-but-fair blows and foul blows, and because arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt where remarks are ambiguous, or simply inartful." *People v. McBride,* 228 P.3d 216, 221 (Colo.App.2009) (internal quotation marks and citations omitted).

> Whether closing argument is improper depends upon the nature of the comments and on whether the jury's attention has been directed to something it is not entitled to consider. Claims of improper argument must be evaluated in the context of

the argument as a whole and in light of the evidence before the jury.

*Perea,* 126 P.3d at 247 (citation omitted).

When determining whether the prosecutor's statements were proper and whether reversal is warranted, we consider, among other things, the language used, the context of the statements, whether a statement improperly expressed the prosecutor's personal opinion, whether the statement is an acceptable comment on the credibility of witnesses, the strength of the evidence, whether the evidence is conflicting or inconclusive, whether the prosecutor improperly appealed to the jurors' sentiments, whether the misconduct was repeated, and any other relevant factors.

*People v. Walters,* 148 P.3d 331, 335 (Colo. App.2006).

¶ 65 Furthermore, "[l]ack of an objection is a factor to be considered in examining the impact of a prosecutor's closing argument.... The lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *Wallace,* 97 P.3d at 269 (internal quotation marks omitted).

### C. Application—Preserved Issues

#### 1. Systematic Torture

¶ 66 In opening statement, the prosecutor referred to defendant's repeated beatings of the victim as "systematic torture." Defendant objected, asserting that the statement was an improper characterization of the evidence. The trial court overruled defendant's objection, but cautioned the prosecutor to avoid unnecessarily inflammatory terms. The prosecutor did not again use the word "torture" during the trial.

¶ 67 The prosecutor referred to defendant's actions as "systematic torture" immediately after describing the multiple items defendant used to beat the victim, including a wooden board that was coated in the victim's blood, a meat tenderizer, a belt, and a metal belt buckle, together with the multiple ways he inflicted pain on the victim, including using his feet to stomp on the victim's back and testicles and using his hands to strangle, slap, and punch him.

¶ 68 The prosecution presented evidence that defendant used all these methods to beat the victim over a period of many months, and the victim testified that the beatings occurred almost daily during the last several months he resided with defendant. Medical and pictorial evidence demonstrated the severity of the injuries the victim sustained.

¶ 69 Considering the context in which the statement was made, we conclude that the prosecution's statement was a properly descriptive term used to refer to the routine and severe beatings defendant inflicted on the victim over the course of several months. Hence, the trial court did not abuse its discretion when it overruled defendant's objection.

#### 2. Defendant Likes Child Abuse

¶ 70 In his closing argument, defense counsel repeatedly stated that "No one likes child abuse." In rebuttal closing argument, the prosecutor stated, "Here's a possibility: [Defendant] likes child abuse." Defendant objected on the grounds that this was an inappropriate statement that inflamed the jurors' emotions and that it consisted of facts not in evidence. Defendant moved to strike the comment and moved for a mistrial. The trial court denied the motion for a mistrial, but sustained the objection and instructed the jury to disregard the statement.

¶ 71 Absent evidence to the contrary, we presume that the jury understood and followed the court's instructions. *Hogan,* 114 P.3d at 55–56 (finding no reversible error where trial court sustained the defendant's objections to four different lines of questioning by the prosecutor and instructed the jury to disregard one line of questioning).

¶ 72 Here, any potential prejudice was cured by the trial court's ruling and instruction to the jury to disregard the remark. The trial court did not abuse its discretion in denying defendant's motion for a mistrial. *See id.*

### D. Application—Unpreserved Issues

¶ 73 We review defendant's remaining assertions of prosecutorial misconduct for abuse of discretion and plain error.

#### 1. Epitome of Child Abuse

¶ 74 Defendant asserts that the prosecutor presented an improper personal opinion when asserting in opening statement that what the victim suffered was "the epitome of child abuse[:] [p]hysical abuse, emotional abuse, and sexual abuse," and arguing in closing that defendant's sexual assault on the victim was "the epitome of what sexual abuse would be to a man by targeting that area of a man." We reject the contention.

¶ 75 The prosecution's statements were proper arguments, characterizing the evidence in a persuasive manner, and using appropriate oratorical embellishment. *See Allee*, 77 P.3d at 837.

#### 2. Appropriate and Reasonable Discipline

¶ 76 Defendant asserts the prosecutor improperly argued in closing that the affirmative defense of appropriate and reasonable discipline is "ridiculous and offensive" and "offensively ridiculous." We reject this contention.

¶ 77 We first reject defendant's contention that he did not argue that his actions were reasonable and appropriate discipline. Defendant requested the court to instruct the jury that a "parent, guardian, or other person entrusted with the care and supervision of a minor or an incompetent person may use reasonable and appropriate physical force upon the minor when and to the extent it is reasonably necessary and appropriate to maintain discipline or promote the welfare of the child," and the court did so.

¶ 78 Further, while admitting in his closing argument that defendant's "discipline" went too far, defense counsel also made at least two statements that referred to defendant's actions as being reasonable and appropriate.

¶ 79 We conclude that it was within the bounds of proper argument for the prosecution to argue that it was ridiculous and offensive for defendant, the victim's father, to claim that it was reasonable and appropriate to use various tools to beat the victim in such a way as to cause a constant wound on his buttocks and a pooling of pus in his lower back, among other injuries. *See People v. Iversen*, 2013 COA 40, ¶¶ 37–38, 321 P.3d 573 (finding no impropriety in prosecutor's characterization of defendant's assertion that "he was doing what he was supposed to be doing" as "laughable" where the remark was "not made for the purpose of mocking or personally attacking defense counsel, but, rather, in response to counsel's arguments and as a comment on the evidence and defendant's theory of the case"); *Douglas*, ¶¶ 69–70 (finding that prosecution's statement in rebuttal closing that defendant's argument was "ridiculous" was not improper given that it was "a direct response to defendant's theory of the case, and the lack of a contemporaneous objection may indicate defense counsel's belief that the comments were not overly damaging when they were made").

#### 3. Disfigurement

¶ 80 Defendant asserts that the prosecutor improperly referred to the victim's injuries in closing by stating, "If this isn't disfigurement, ladies and gentlemen, I don't know what is." We disagree. This is not an improper personal opinion. It merely emphasized the horrific nature of the injuries, for which the prosecution had presented overwhelming evidence. The assertion that the victim's injuries were an obvious example of disfigurement was proper argumentative rhetoric that invited the jury to look at the severity of the injuries in determining whether the victim sustained disfigurement. *See Allee*, 77 P.3d at 837.

#### 4. "Trap"

¶ 81 Defendant asserts that the prosecutor's urging the jury not to "fall into that trap," when referring to the lesser included offenses of second and third degree assault, was improper. We reject the contention.

¶ 82 Although a prosecutor's references to the "smoke and mirrors" and "diversionary tactics" of defense counsel's argument may be objectionable because they are aimed at

opposing counsel rather than to the law and the facts, *People v. Coria,* 937 P.2d 386, 391 (Colo.1997), our review of the record indicates that was not the case here.

¶ 83 In *Coria,* the prosecutor's remarks were a general commentary on defense counsel's closing argument. *See id.* at 388. Here, the prosecutor urged the jury not to "fall into the trap" of lesser included offenses, while specifically addressing the jury instructions and the elements of the offenses that the prosecution was required to prove. Additionally, defense counsel addressed this comment in his closing, asking the jury to review the evidence and to follow the law.

¶ 84 Moreover, the jury was properly instructed on the charges and the elements of the offenses, *see Hogan,* 114 P.3d at 56, and it convicted defendant of second degree assault on multiple counts and on one occasion convicted him of only third degree assault. This indicates that the jury was not improperly persuaded to ignore the lesser included offenses.

### 5. Appeal to the Community

¶ 85 Defendant also asserts that the prosecution committed reversible misconduct by making improper appeals to the community when it told the jury to "look at how Moffat County, that community, responded to [the victim]"; calling that social services department and its caseworkers incompetent; stating that defendant whisked [the victim] away to a different community; that this new community "heard" the victim; and urged the community to "tell this man [defendant], who purported to be his father, [victim], we hear you."

¶ 86 "Statements that encourage a jury to convict the defendant in order to carry out the wishes of the community are improper." *Sommers,* 200 P.3d at 1097; *see People v. Salazar,* 648 P.2d 157, 159 (Colo. App.1981) (holding that although the court disapproved of the prosecutor's appeal to "tell [the defendant] that this crime won't be tolerated in this community," the remark was not so objectionable as to conclude that the trial court abused its discretion by failing to grant a mistrial).

¶ 87 Here, even assuming that the prosecutor engaged in misconduct by inappropriately appealing to the community, we conclude that the statements do not rise to the level of plain error requiring reversal of defendant's convictions. *See People v. Gallegos,* 260 P.3d 15, 28 (Colo.App.2010) (holding that the prosecutor's request that the jury "send a message to the community" was improper in the guilt phase of the trial but was not so flagrantly improper as to constitute plain error).

¶ 88 Several of the prosecutor's comments were a proper characterization of the evidence regarding the response of authorities to the victim's situation. The prosecutor was merely arguing that the community's professionals, who were supposed to be protecting the victim and ensuring that he was not suffering abuse at the hands of his adoptive parent, had failed to perceive and act upon the abuse and had allowed it to continue for an extended period. The comments were not so flagrant or inflammatory as to require reversal, particularly absent a contemporaneous objection and where substantial evidence supports defendant's convictions. *See Walters,* 148 P.3d at 335.

### 6. Emotional Scars

¶ 89 We reject defendant's contention that the prosecutor's statement that "[w]e won't talk about the [victim's] emotional scars" was an assertion of facts not in evidence because the victim did not testify thereto. The evidence supported the fact that defendant, a man who adopted the victim and became his father, systematically beat the victim with increasing levels of violence throughout the course of the approximately two years the victim spent in defendant's care. The evidence additionally supported the conclusion that the victim sustained substantial injury as a result of the physical assaults and that he was forced to run away from home to escape the constant abuse. The victim testified several times that he did not initially report the abuse because he was afraid of retaliation.

¶ 90 We conclude that the prosecutor's passing comment that the victim sustained

"emotional scars" as a result of this experience was a reasonable inference based on the evidence introduced at trial. *See Domingo-Gomez*, 125 P.3d at 1047.

## V. Merger

¶ 91 Defendant asserts that his three convictions for second degree assault must merge into three of his convictions for first degree assault because they are lesser included offenses. Under the circumstances here, we agree.

### A. Preservation and Standard of Review

¶ 92 The parties agree that defendant preserved these issues for appellate review.

¶ 93 "Whether an offense is a lesser included offense of another requires statutory interpretation and therefore poses a legal question that we review de novo." *People v. Zweygardt*, 2012 COA 119, ¶ 10, 298 P.3d 1018. Whether different acts constitute more than one offense is a question of law that we review de novo. *See People v. Mintz*, 165 P.3d 829, 833 (Colo.App.2007). And "[w]e review de novo constitutional challenges to sentencing determinations." *People v. Firm*, 2014 COA 32, ¶ 6.

### B. Law

¶ 94 A defendant may not be punished twice for the same conduct if one offense is a lesser included offense of another. *See* § 18–1–408(1)(a), C.R.S.2013; *People v. Davis*, 2012 COA 1, ¶ 79 (*cert. granted* Nov. 5, 2012); *see also Meads v. People*, 78 P.3d 290, 293 (Colo.2003) (noting that double jeopardy bars conviction of a lesser included offense only if the two convictions arise out of the same conduct).

¶ 95 We apply a "strict elements test," also known as the *Blockburger* test, to determine whether one offense is a lesser included of another. *Meads*, 78 P.3d at 294–95; *People v. Leske*, 957 P.2d 1030, 1036 (Colo.1998). Under this test, "if proof of the facts establishing the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense, the lesser offense is included" for purposes of double jeopardy. *Leske*, 957 P.2d at 1036.

"If, however, each offense necessarily 'requires proof of at least one additional fact which the other does not,' the strict elements test is not satisfied and a presumption arises that convictions for both offenses is consistent with legislative intent." *Id.* (quoting *People v. Henderson*, 810 P.2d 1058, 1063 (Colo.1991)).

¶ 96 The elements of first degree assault and second degree assault are identical save for one difference. First degree assault requires proof that the defendant both intended to cause, and did cause, *serious* bodily injury to another person. § 18–3–202(1)(a), C.R.S.2013. Second degree assault requires proof that the defendant both intended to cause, and did cause, bodily injury to another person. § 18–3–203(1)(b), C.R.S.2013.

### C. Application

¶ 97 If the prosecution has proved that a defendant intended to cause, and did cause, serious bodily injury to another person, the prosecution has necessarily proved that the person intended to cause, and did cause, the lesser degree of bodily injury as well. *See People v. Martinez*, 189 Colo. 408, 411, 540 P.2d 1091, 1093–94 (1975). We turn now to the three convictions that defendant contends must merge.

¶ 98 First, the prosecution charged and the jury convicted defendant of first degree assault for "wooden board to the buttocks between and including August 20, 2009 and January 2, 2010" and second degree assault for "wooden board to the back and buttocks between and including August 20, 2009 and January 2, 2010."

¶ 99 Second, the prosecution charged and the jury convicted defendant of both first degree assault and second degree assault for "wooden board to the back and buttocks on January 3, 2010."

¶ 100 Third, the prosecution charged and the jury convicted defendant of first degree assault and second degree assault for "board to the head between and including August 20, 2009 and January 3, 2010."

¶ 101 With regard to the two convictions involving assaults on the victim on January 3,

2010, the People argue that "the beating was long and defendant needed a break." As we understand this argument, the People appear to be arguing that defendant could have started the beating with the intent to cause serious bodily injury, took a break during the beating, and resumed the beating with the intent only to cause bodily injury—or vice versa. However, we cannot find any support in the record for the assertion that defendant divided the beating into two separate phases. Thus, we conclude that the conviction for second degree assault on January 3, 2010, must merge into one conviction for first degree assault.

¶ 102 With respect to the remaining two instances of overlapping convictions, the People argue that the convictions should not merge because the jury could rationally have concluded that defendant inflicted the second degree assaults as separate acts in addition to the first degree assaults, particularly because the charges reflect an underlying date range during which the victim testified he was beaten numerous times. But it is impossible to separate out the evidence that would support both convictions as being based on different conduct, and the People have not directed us to any such evidence.

¶ 103 In addition, the prosecution conceded this issue at sentencing. There, in its sentencing memorandum, the prosecution stated that, "Three counts of Assault in the Second Degree have merger issues. The Jury found Defendant guilty of four counts of Assault in the First Degree and also three counts of Assault in the Second Degree which encompass identical conduct." The prosecution also conceded that second degree assault was a lesser included offense of first degree assault, asserted that the convictions should merge, and argued that defendant should be sentenced in accordance with the convictions for the four counts of first degree assault.

¶ 104 Furthermore, in a chart included at the end of the sentencing memorandum, the prosecution noted that counts three, twelve, and twenty-one—the three convictions for second degree assault—should merge.

¶ 105 Accordingly, we conclude that the three convictions for second degree assault should merge into the parallel convictions for first degree assault. And we remand the case to the trial court to amend the sentencing mittimus to merge the convictions on three counts of second degree assault.

## VI. Clerical Error in the Mittimus

¶ 106 The parties agree, and we concur, that the mittimus contains a clerical error. Count seventeen, which currently reads as a conviction for child abuse negligently causing death, should be amended to reflect the actual jury conviction for child abuse resulting in serious bodily injury.

## VII. Conclusion

¶ 107 Except for the three second degree assault convictions noted above, we affirm the judgment of conviction. We remand the case to the trial court to merge defendant's three convictions for second degree assault with his convictions for first degree assault. Because the court's sentence on the now-merged counts was imposed to run concurrently, resentencing is not required. The court must also amend the conviction on count seventeen to reflect a conviction for child abuse causing serious bodily injury.

JUDGE DAILEY and JUDGE BERGER concur.