20CA0143 Peo v Romero 12-05-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 20CA0143
Weld County District Court No. 18CR881
Honorable Shannon D. Lyons, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Phillip Romero,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE PAWAR
Brown and Richman*, JJ., concur

Prior Opinion Announced October 13, 2022, Reversed in 22SC845

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 5, 2024

Philip J. Weiser, Attorney General, Erin K. Grundy, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Barbara A. Snow, Alternate Defense Counsel, Longmont, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Phillip Romero, was convicted of various offenses arising out of an incident in which he assaulted a sexual partner, T.A.  His convictions included several habitual criminal counts and he was sentenced accordingly.

¶ 2    He appealed to this court, challenging the trial court's denial of his *Batson* challenge during jury selection and the propriety of his sentence.  Two members of this division agreed with his *Batson* argument and therefore reversed without addressing his challenges to his sentence.  *People v. Romero*, 2022 COA 119, ¶ 3.  The supreme court granted certiorari and reversed that opinion, holding that the trial court properly denied the *Batson* challenge.  *People v. Romero*, 2024 CO 62, ¶ 71.  The supreme court remanded the case to us to consider Romero's remaining appellate arguments.  We do so now.

## I.    Background

¶ 3    According to evidence presented at trial, T.A. arrived at Romero's house in the morning and they spent most of the day together.  After having sex, Romero got angry with T.A., apparently because she uttered another man's name during sex.  Romero threatened T.A. and then physically beat her, first with his fists and

then with a wooden board, breaking her lower leg.  Romero initially prevented T.A. from leaving the house after the assault.  Eventually, T.A. left the house and went to the hospital.

¶ 4     Romero was charged with first degree assault, second degree assault, felony menacing, false imprisonment, and several habitual criminal counts.  At trial, T.A. testified but could not remember much about the events in question.  The trial court therefore admitted audio recordings of two separate interviews she gave to law enforcement, the first when she was still in the hospital immediately after the assault and the second several months later.

¶ 5     The jury found Romero guilty of first and second degree assault, felony menacing, and false imprisonment.  At the habitual criminal trial, the court found that the prosecution had proved the habitual criminal counts.  The court imposed a sixty-four-year habitual criminal sentence for first degree assault to be served consecutively to a thirty-two-year habitual criminal sentence for second degree assault.  Romero's sentences for felony menacing and false imprisonment were shorter and imposed concurrently with the assault sentences.  All told, Romero was sentenced to ninety-six years in the custody of the Department of Corrections.

¶ 6 There are three different sentencing issues we must address on remand from the supreme court. First, Romero contends that because there was only a single continuous assault, the trial court violated his constitutional right to be free from double jeopardy by imposing two separate assault sentences. Second, he argues that even if the trial court had the discretion to impose consecutive assault sentences, it abused that discretion by doing so. Third, he argues that his sentence is disproportionate to his crimes and therefore violates the Eighth Amendment.

¶ 7 We disagree with his first two arguments and remand on the third.

## II. Double Jeopardy

¶ 8 We review de novo whether the imposition of multiple sentences constitutes a double jeopardy violation. *People v. Valera-Castillo*, 2021 COA 91, ¶ 49. Because Romero did not raise this argument in the trial court, it is unpreserved, and we will reverse only if any error was plain. *See Hagos v. People*, 2012 CO 63, ¶ 14. We perceive no error, let alone plain error.

¶ 9 The constitutional right to be free from double jeopardy prohibits the imposition of multiple punishments for the same

3

criminal conduct. *People v. Wagner*, 2018 COA 68, ¶ 11. However, a defendant may be subject to multiple punishments for the same offense if he commits that offense multiple times. *Id.* at ¶ 13. Romero was not convicted of two counts of the same offense. Nevertheless, second degree assault is a lesser included offense of first degree assault, and double jeopardy principles therefore require that the two counts merge unless supported by different criminal conduct. *See People v. Lovato*, 2014 COA 113, ¶¶ 97-105.

¶ 10 To determine whether Romero's conduct can support two separate punishments, we consider whether the evidence introduced at trial was sufficient to support distinct and separate offenses. *See Valera-Castillo*, ¶ 53. Factors relevant to this inquiry include the time and location of the events, Romero's intent, whether the acts were separated by intervening events or were the product of new volitional departures, and whether the prosecution presented the acts as legally separable. *Id.*

¶ 11 T.A.'s trial testimony did not shed any light on whether there was a single assault or two legally separable ones. However, the recordings of her two interviews with law enforcement did. In the first interview, T.A. said that the physical abuse started downstairs

4

in Romero's house with Romero punching her in the side of the head. T.A. said that it then escalated when Romero grabbed a board and hit her with it multiple times.

¶ 12 In the second interview, T.A. specified that her leg broke when Romero was hitting her with the board upstairs.

¶ 13 This evidence suggested that there was a volitional departure between an initial assault in which Romero used only his fists and a second assault in which he decided to grab a board and beat T.A. with it.

¶ 14 We recognize that the prosecutor's closing argument did not clearly present the two assaults as legally separable. In closing, the prosecutor reminded the jury that there was evidence that Romero beat T.A. with a board both upstairs and downstairs. And the only distinction the prosecutor made between the two assault counts was that one resulted in mere bruises (second degree assault) and the other resulted in a broken leg (first degree assault).

¶ 15 Nevertheless, we conclude that T.A.'s interview sufficiently established two legally separable assaults — the second degree assault occurred when Romero punched T.A. in the head downstairs, and the first degree assault occurred when Romero

abandoned that mode of attack and beat T.A. with a board both upstairs and downstairs, breaking her leg. Accordingly, the trial court did not err, plainly or otherwise, by imposing separate punishments for the assault counts.

¶ 16    Romero also argues that the court violated his due process rights in that the prosecutor misstated the evidence to the court and that the evidence could not possibly have supported separate convictions and punishments. *See People v. Tuffo*, 209 P.3d 1226, 1231 (Colo. App. 2009) (due process requires that sentencing determinations are based on reliable evidence, not misinformation). However, as explained above, the evidence did support separate convictions and punishments. We therefore reject Romero's due process argument.

III.    Consecutive Sentencing

¶ 17    Romero next asserts two challenges to the court's imposition of consecutive sentences for the assault counts. He first argues that the relevant sentencing statutes required the court to impose the assault sentences concurrently. We review this issue de novo. *See People v. Phillips*, 2012 COA 176, ¶ 171.

¶ 18    He then argues that even if the trial court had discretion to impose consecutive sentences, the court abused that discretion by failing to support its decision to run the sentences consecutively. We review this issue for an abuse of discretion. *See Juhl v. People,* 172 P.3d 896, 900 (Colo. 2007).

¶ 19    We disagree with both of these arguments.

A.    The Court Had Discretion to Run Sentences Consecutively

¶ 20    In general, trial courts have discretion to impose either concurrent or consecutive sentences. *Id.* at 899. However, when a defendant is convicted of multiple crimes of violence arising out of the same criminal episode (as Romero was here), concurrent sentences for crimes of violence are required *only if* they are supported by identical evidence. *See People v. Espinoza,* 2017 COA 122, ¶ 32, *rev'd on other grounds,* 2020 CO 43. Whether the evidence supporting two convictions is identical is an "evidentiary test" that asks "whether the charges result from the same act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different." *Juhl,* 172 P.3d at 902.

¶ 21    We conclude that the two assault convictions were based on different acts and therefore non-identical evidence.  As explained above, the second degree assault conviction was based on the initial stage of the physical abuse when Romero was punching T.A. in the head downstairs.  The first degree assault conviction was based on a different act, namely Romero picking up a board and beating T.A. with it, both upstairs and downstairs, breaking her leg.

   B.    Consecutive Sentences Were Not an Abuse of Discretion

¶ 22    We are similarly unpersuaded by Romero's abuse of discretion argument.  When a court has discretion to impose either concurrent or consecutive sentences, it must exercise that discretion in consideration of "the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law and the deterrence of crime, and the protection of the public." *People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990).  And as Romero points out, "[t]he sentencing court must 'state on the record the basic reasons for imposing the sentence.'" *Id.* (quoting *People v. Watkins*, 613 P.2d 633, 637 (1980)).

¶ 23    Romero argues that even if the trial court here had discretion to impose consecutive sentences, it abused that discretion because

the court "neither made findings, nor stated factual considerations, as to whether the assault evidence was identical." Although the court did not address the identical evidence issue at the sentencing hearing, the evidence supporting the two assault convictions was not identical, as explained above. And in imposing consecutive sentences, the court did address Romero's character and rehabilitative potential, his respect for the law, and the protection of the public. This fulfilled the court's duty to explain the basic reasons for the sentence. We therefore conclude that the court did not abuse its discretion by imposing consecutive sentences.

## IV.  Proportionality Review

¶ 24     Romero next argues that his habitual criminal sentences were disproportionate to his crimes and therefore violated the Eighth Amendment's prohibition of cruel and unusual punishment. That Romero failed to raise this issue in the trial court does not prevent us from addressing it for the first time here. *See People v. Session*, 2020 COA 158, ¶ 51. However, the first step in a proportionality review requires an analysis of the facts and circumstances surrounding the triggering and predicate offenses. *See Wells-Yates v. People*, 2019 CO 90M, ¶ 75. And unlike us, trial courts are

"uniquely suited" to conduct such analyses in the first instance. *Id.* We therefore decline to conduct an abbreviated proportionality review for the first time on appeal and remand the case to the trial court with directions to conduct one in accordance with *Wells-Yates.*

## V.    Disposition

The case is remanded to the trial court with directions to conduct a proportionality review. The judgment of conviction is otherwise affirmed.

JUDGE BROWN and JUDGE RICHMAN concur.